## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD.,<br><br>                    Plaintiff,<br><br>v.<br><br>IMPERIUM IP HOLDINGS (CAYMAN), LTD.,<br>                    Defendant. | Civil Action 15-1059-CFC |

## DEFENDANT IMPERIUM IP HOLDINGS (CAYMAN), LTD.'S
## <u>MOTION TO TRANSFER</u>

Defendant Imperium IP Holdings (Cayman), Ltd., ("Imperium") moves to transfer this action to the Eastern District of Texas.  The grounds for this motion are set forth in Defendant Imperium IP Holdings (Cayman), Ltd.'s Opening Brief in Support of Motion to Transfer, filed contemporaneously with this motion.

STRADLEY RONON
STEVENS & YOUNG, LLP


                    */s/ Joelle E. Polesky*
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Tel: 302 295-4856
Email: jpolesky@stradley.com

*Attorneys for Defendant, Imperium IP Holdings (Cayman), Ltd.*

Dated: May 11, 2020

1

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD.,

Plaintiff,

v.

IMPERIUM IP HOLDINGS (CAYMAN), LTD.,

Defendant.

Civil Action 15-1059-CFC

## DEFENDANT IMPERIUM IP HOLDINGS (CAYMAN), LTD.'S OPENING BRIEF IN SUPPORT OF MOTION TO TRANSFER

Joelle E. Polesky (ID No. 3694)
Stradley Ronon Stevens & Young, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Tel: 302 295-4856
Email: jpolesky@stradley.com

*Attorneys for Defendant, Imperium IP Holdings (Cayman), Ltd.*

OF COUNSEL:

Gregory L. Ewing (to be admitted *pro hac vice*)
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202 204-3005
Email: gewing@potomaclaw.com

Dated: May 11, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ..................................... 1

STATEMENT OF RELEVANT FACTS ............................................... 2

I.      Imperium's patent-infringement litigation in Texas ...................... 2

   A.    Imperium's 2011 action against Sony ..................................... 2

   B.    Imperium's 2014 action against Samsung................................ 3

   C.    The Texas court repeatedly denies Samsung's untimely attempts to
         assert its Sony-license theory. ................................................. 4

   D.    Samsung's Federal Circuit Appeals ........................................ 8

II.     Samsung's collateral action in this Court ................................... 9

ARGUMENT ................................................................................. 11

I.      Legal Standard .......................................................................... 11

II.     Samsung cannot satisfy the requirements of Delaware law to be
        considered a third-party beneficiary under the SLA. ................ 12

   A.    There is no evidence that the contracting parties intended to benefit
         a third party through the contract ........................................ 13

   B.    There is no evidence the contracting parties intended that a third-
         party benefit serve as a gift or satisfaction of a preexisting
         obligation to the third party ................................................ 15

   C.    There is no evidence that benefiting the third party was a material
         aspect to the parties agreeing to contract.............................. 16

III.    The Eastern District of Texas is still the most appropriate forum for
        this dispute. .......................................................................... 18

CONCLUSION ............................................................................. 21

i

# TABLE OF AUTHORITIES

## Cases

*Am. Fin. Corp.v. Computer Sciences Corp.*,
  558 F. Supp. 1182 (D. Del. 1983) ........................................................16

*Amirsaleh v. Board of Trade of the City of New York, Inc.*,
  2008 WL 4182998 (Del. Ch. Sept. 11, 2008) ......................................12

*Collins v. Mary Kay, Inc.*, 874 F.3d 176 (3d Cir. 2017)..........................11

*Community Ass'n Underwriters of America v. Rhodes Dev. Group, Inc.*,
  488 Fed. Appx. 547 (3d Cir. 2012) ......................................................14

*E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin
  Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001) ............................15

*Eastman Chemical Co. v. AlphaPet Inc.*, 2011 WL 6004079 (D. Del. 2011).........15

*Empire Fire & Marine Insur. Co. v. Miller*,
  2012 WL 1151030 (Del. Comm. Pl. Apr. 5, 2012)...............................13

*Freedom Mortg. Corp. v. Irwin Fin. Corp.*,
  2009 WL 763899 (D. Del. Mar. 23, 2009)...........................................19

*Galvagna v. Marty Miller Constr., Inc.*,
  1997 WL 720463 (Del. Super. Ct. Sep. 19, 1997) ...............................13

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
  203 F. Supp.3d 755 (E.D. Tex. 2016). .................................................20

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
  749 Fed. App'x 989 (Fed. Cir. 2019)....................................................8

*In re Amendt*, 169 Fed. App'x 93 (3d Cir. 2006).................................................19

*In re McGraw-Hill Global Education Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018) ..................................................................11

4556038v.1

*Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257 (Del. Ch. 1987) ........... 12, 16

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir. 1995). ........................... 18, 20

*Madison Realty Partners 7, LLC v. AG ISA, LLC*,
      2001 WL 406268 (Del. Ch. Apr. 17, 2011) ........................................................12

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
      2012 WL 3777423 (D. Del. Aug. 30, 2012) .......................................................19

*Peter Schoenfeld Asset Management LLC v. Shaw*,
      2003 WL 21649926 (Del. Ch. July 10, 2003) ....................................................14

*Reserves Dev. LLC v. Severn Sav. Bank, FSB*,
      2007 WL 4054231 (Del. Ch. Nov. 9, 2007) ................................................ 12, 13

*United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810 (Del. Ch. 2007) ..........14

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................11

4556038v.1

## NATURE AND STAGE OF PROCEEDINGS

After the Third Circuit's remand, this Court granted Samsung permission to file its Second Amended and Supplemental Complaint ("SAC") (D.I. 63). The Court then dismissed Imperium's renewed motion to dismiss (D.I. 88). The Court further denied without prejudice to renew Imperium's motion to transfer, requesting additional briefing on *In re McGraw Hill* and Samsung's standing as an alleged third-party beneficiary to the Sony License Agreement.

## SUMMARY OF ARGUMENT

Imperium requests that the Court transfer this action to the Eastern District of Texas as that is the jurisdiction where (1) every one of the underlying facts to Samsung's Complaint occurred, (2) the parties filed every document, (3) the Court heard all of the testimony relevant to this dispute, including the testimony of experts, and (4) the Court considered every legal argument made. Accordingly, the Court in the Eastern District of Texas is already intimately familiar with every aspect of this complex dispute.

In a blatant attempt at forum shopping and to avoid the Texas Court that is most familiar with the issues it now raises and has ruled against it in the past, Samsung relies exclusively on its claim that it is a third-party beneficiary to the Sony-Imperium License Agreement ("SLA"). However, as a matter of law, Samsung has no right to enforce the SLA's forum selection clause. Moreover, as a

1

matter of law and fact, the Eastern District of Texas is the appropriate forum for this action.  Consequently, transferring this case to the Eastern District of Texas for final resolution is the appropriate and just result.

## STATEMENT OF RELEVANT FACTS

### I.    Imperium's patent-infringement litigation in Texas

In the early 2000s, ESS Technology was a global leader in developing and manufacturing digital-camera technology for cellphones, and Samsung was its largest customer.[1]  Imperium was formed in 2008, when ESS spun off its portfolio of about 70 digital-camera-related patents.

### A.    Imperium's 2011 action against Sony

In 2011, Imperium sued Sony, Apple, LG, and four other large Samsung competitors for infringing five patents, including Imperium's '884 patent.[2]  That litigation concluded two years later, when the defendants each signed confidential settlement-and-license agreements with Imperium.[3]  Under the Sony-Imperium License Agreement ("SLA"), Sony acquired a license to Imperium's patent portfolio, and a release.[4]  The SLA also disclaims all third-party-beneficiary rights

---

[1]    *See generally* E.D. Tex. Case 4:14-cv-00371 ("Texas Action"), D.I. 1 at ¶ 1.

[2]    *See* D.I. 63 at ¶ 2; E.D. Tex. Case 4:11-cv-163 ("Sony Action"), D.I. 1 (asserting, *inter alia*, Imperium's U.S. Patent No. 6,271,884).

[3]    *See*, Sony Action D.I. 512, 517, 522, 527, 531, 535, 536.

[4]    D.I. 10-1 (copy of SLA) at 3–4 (§§ 2.1, 2.2, 2.6); *see also id*. at 2 (defining "Covered Third Party Products"); D.I. 63 at ¶¶ 3–4.

4556038v.1

"except as expressly provided," and includes a Delaware forum-selection clause (which binds "Licensor and Licensee" and grants no related third-party rights).[5]

## B.    Imperium's 2014 action against Samsung

Imperium commenced its Texas action against Samsung in June 2014, alleging infringement of three patents.[6]  The asserted '884 patent was common to the previous Sony action, so Imperium's complaint identified that as a related case.[7] Imperium's complaint also identified 66 different examples of allegedly infringing Samsung cameras, laptops, tablets, and phones.[8]  After discovery began in January 2015, Imperium served infringement contentions that specified additional accused products (for a total of 163).[9]

Samsung's interrogatory responses indicated that some of these products— including 34 of the 66 named in the complaint – contained Sony-manufactured image sensors.[10]  This was consistent with Imperium's obligations under the SLA, since these Sony components were superfluous to Imperium's infringement claims.[11]

---

[5]    *Id.* at 10 (§§ 6.5, 6.7).

[6]    D.I. 63 at ¶ 5; Texas Action D.I. 1.

[7]    Texas Action D.I. 1 at ¶ 17.

[8]    *Id.* at ¶¶ 21, 32, 44.

[9]    *See* D.I. 63 at ¶ 7.

[10]    Texas Action D.I. 169-16 (identifying image sensors in accused products).

[11]    Such products invariably include third-party components, and Samsung's were no exception. *See*, *e.g.*, *id.* (identifying sensors from Panasonic, Texas

3

After Imperium received consent from Sony, it produced a copy of the SLA to Samsung on April 2, 2015.[12]

## C. The Texas court repeatedly denies Samsung's untimely attempts to assert its Sony-license theory.

The Texas court's fact-discovery and summary-judgment deadline—September 9, 2015—passed without Samsung alleging a license defense premised on the SLA or any other Imperium license agreement.[13]  Instead, on November 3, 2015, Samsung first raised the SLA in the Texas Action via a request to file an "out-of-time" summary-judgment motion.[14]  That was two months after the deadline, seven months after receiving the SLA from Imperium, and fifteen months after receiving the complaint.  What is more, discovery showed that Samsung had been

---

Instruments, and approximately ten other companies).  But Imperium did not rely on Sony sensors to satisfy any element of the asserted patent claims, since some accused products had multiple cameras, and each phone, tablet or laptop contained at least one non-Sony sensor.  The asserted '029 patent claims also did not require an image sensor.

[12]     D.I. 37 (Samsung response to previous motion to dismiss) at 3.

[13]     Samsung's answer alleged "[o]n information and belief" a placeholder defense based on "a covenant not to sue, an express and/or implied license, and/or [patent] exhaustion." Texas Action D.I. 29 at ¶ 63. In responding to Imperium's interrogatories, Samsung said its investigation was ongoing, and did not provide any further information until July 2015—when it specified an unrelated license theory based on an industry standards body. *Id.* D.I. 169-2 at 38–39.

[14]     Texas Action D.I. 155; *see also* D.I. 63 at ¶¶ 9–11.

4556038v.1

tracking the Sony Action, and had known of Sony settling "to Imperium's satisfaction," long before then.[15]

On January 21, 2016, the Texas Court denied Samsung's "out-of-time" summary-judgment request. In so doing, the Court rejected Samsung's allegations that Imperium "obscured . . . that it [wa]s relying upon Sony sensors for purposes of infringement."[16] As the Court observed, Samsung knew or should have known, months before the deadline, "much of the information" it relied upon to support its summary judgment motion, and even if that were otherwise, waiting another eight weeks to raise such a "time-sensitive and impactful" issue was "significantly less excusable."[17] Nevertheless, the Court permitted Samsung to further brief how the SLA should affect trial, which was "rapidly approaching" and scheduled to begin on February 1, 2016.[18]

Samsung re-raised its Sony-license arguments in the court-permitted brief– and in its motions in limine, in a motion to submit supplemental expert reports, and

---

[15]    Just weeks after Imperium's filing of the Sony action, Samsung hired a patent broker to try to purchase Imperium's patents anonymously. *See* Fed. Cir. Case 18-1923, D.I. 31 at 9. Samsung then continued to track that litigation through the end of 2013. *Id.* at 22. In one October 31, 2013 email, Samsung's broker informed a Samsung in-house attorney that the Sony Action had concluded and that Sony had "settled to Imperium's satisfaction." *Id.* at 21.

[16]    2016 WL 278971, at *2 (Texas Action D.I. 219).

[17]    *Id.* (further observing that Samsung had filed five other motions during these eight weeks).

[18]    *Id.* at *3.

4556038v.1

at the final pretrial conference.[19]  After hearing Samsung's extensive arguments, the Texas Court refused to allow Samsung's untimely Sony-license theory "to be inserted into this trial."[20]  But to ensure that it fully considered the issue, despite the last-minute nature of Samsung's request, the Court promised Samsung the opportunity to continue to argue its Sony-license theory post-trial.[21]

After a seven-day trial, the jury found Samsung liable for willfully infringing Imperium's '884 and '029 patents.[22]  Shortly thereafter, the Court ordered post-trial briefing on (1) "whether the [SLA] applies when accused products merely contain a licensed Sony device," (2) "whether [Imperium] actually accuse[d] products of infringement by relying on licensed Sony devices," (3) "whether [Samsung] waived the issue of the Sony License," and (4) "whether any alleged concealment by [Imperium] bears on these issues."[23]

After considering the parties' briefing, the Texas Court concluded that Samsung had "waived [its] defense based on the [SLA]."[24]  It again noted that Samsung had failed to assert the SLA "until well beyond the deadline for summary

---

[19]    Texas Action D.I. 186, 198, 227, 315.

[20]    Texas Action D.I. 315 at 35.

[21]    *See id.* at 36.

[22]    *See* D.I. 63 at ¶ 11.

[23]    Texas Action D.I. 254 at 2.

[24]    203 F. Supp. 3d 755, 761 (Texas Action D.I. 329).

judgment," and had chosen "not to raise [it], even when they admit to becoming aware of the issue."[25]  As the Court put it, "[i]f anything," Samsung's interrogatory responses "after receiving the [SLA] on April 2, 2015, indicated an active intention *not* to assert [it]."[26]  The Court also further considered and rejected Samsung's allegations that Imperium had "concealed" any reliance on Sony components:

> [Imperium] maintains that it did not rely on Sony sensors and that its theory regarding the claims allows that "capturing a preparatory image" limitation can be performed by components other than an image sensor, such as an image processor …. [T]hat [Samsung] disagree[s] about the way in which the claim limitation should be read … does not demonstrate concealment or misconduct.[27]

On the same day of the decision on waiver, the Texas Court entered final judgment awarding Imperium approximately $20 million, a sum reflecting enhancement of damages "to the maximum extent allowable" under 35 U.S.C. § 284 for Samsung's "egregious" conduct during and before the litigation.[28]  Despite already having one post-trial avenue to litigate its Sony-license arguments, Samsung repeated them in a Rule 50(b) motion a month after the judgment,[29] marking

---

[25]    *Id*. at 759–60.

[26]    *Id.* at 760 (emphasis in original).

[27]    203 F. Supp. 3d at 760 (Texas Action D.I. 329).

[28]    *Id.* at 763–64 (noting Samsung's copying, "material misrepresentations under oath," and failure to produce documents until after Imperium's case-in-chief at trial); Texas Action D.I. 330.

[29]    Texas Action D.I. 337.

**Samsung's 17th brief on Sony-license issues in Texas**.[30]   The Court once again denied Samsung's request, explaining that it had "already considered and rejected [Samsung's] arguments regarding the Sony license defense."[31]

### D.   Samsung's Federal Circuit Appeals

Samsung appealed the judgment and related attorney's fees award to the Federal Circuit.   Between the two appeals, Samsung devoted 51 pages to briefing Sony-license issues.[32]   But Samsung repeatedly urged the Federal Circuit not to reach that or several other issues.[33]

Samsung got what it asked for.   On January 31, 2019, the Federal Circuit held that Samsung was entitled to judgment as a matter of law on whether a prior-art reference anticipated the asserted '884 patent claims.   The Federal Circuit thus eliminated all damages and fees awarded to Imperium without reaching, or ever mentioning, the SLA.[34]   The Federal Circuit concluded that it "need not reach any

---

[30]   *See* D.I. 42 at 1 n.1 (citing briefs).

[31]   *See* D.I. 42 at 1 n.1 (citing briefs).

[32]   *See* 3d Cir. Case No. 17-3445, Imperium Dec. 20, 2018 Resp. Br. at 1, n.2 (citing pages).

[33]   Fed. Cir. Case No. 17-2107, D.I. 45 at 3; *see also id.* at 35; Fed. Cir. Case No. 17-2107, D.I. 66 at 1, 2, 15; Fed. Cir. Case No. 18-1923, D.I. 28 at 7, D.I. 35 at 3.

[34]   Upon finding the '884 claims invalid as anticipated, the court also reversed the attorney's fees award because Imperium was "no longer the prevailing party." *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 749 Fed. App'x 989, 990 (Fed. Cir. 2019).

4556038v.1

of the remaining issues presented on the appeal and cross-appeal, all of which are mooted by the reversal of liability."[35]

## II.   Samsung's collateral action in this Court

Shortly before trial in Texas, on November 16, 2015, Samsung commenced this collateral action, asserting claims predicated on Imperium's pursuit of the Texas Action and allegations that Samsung had raised two weeks earlier in Texas, in connection with its "out-of-time" summary-judgment request.[36]   Days later, Samsung also filed an "emergency" motion seeking to enjoin the Texas Action.[37] But after hearing from the parties, this Court stayed this action instead.  As the Court reasoned:

> [T]he dispute is before Judge Mazzan[t] who, being very familiar with the parties and the technology, is in a much better position to resolve the initial (if not the dispositive) issue, that is, has Imperium asserted infringement [in] the Texas litigation against products covered by the Sony Agreement and whether such assertions were made timely or concealed."[38]

---

[35]    *Imperium*, 757 Fed. App'x at 980.

[36]    *Compare* D.I. 2 (complaint) *with* Texas Action D.I. 155, 157 (alleging, *inter alia* third-party beneficiary status under the SLA, that the accused Samsung products are "Covered Third Party Products," and that Imperium had "concealed" reliance on Sony sensors and breached the SLA).

[37]    D.I. 9. Samsung also filed a similar motion in Texas, which the Court there denied after adopting this Court's reasoning.  *See* Texas Action D.I. 171, 215.

[38]    D.I. 18 at 2.

After reassignment, this Court lifted the stay in August 2017.[39]  Samsung then filed a First Amended Complaint asserting the same causes of action, but with updated allegations and requests for relief based on the status of the Texas Action.[40] On September 11, 2017, Imperium moved to dismiss, urging four bases for relief that included res judicata and the first-filed rule.[41]  After full briefing, the Court granted the motion, finding that "the first-filed rule requires we dismiss without prejudice to Samsung to file any remaining claims in the Eastern District of Texas."[42] As the Court explained:

> Samsung is duplicating litigation in Texas. Samsung is currently appealing Judge Mazzant's specific finding Samsung waived a licensing defense to Imperium's patent infringement action. Samsung's defense derives from licensing provisions in the Agreement between Imperium and Sony. … Nevertheless, Samsung seeks to prosecute its claims against Imperium in this Court arguing Imperium breached the very same agreement by suing Samsung for infringement in Texas. … Samsung's defenses, now dressed up as affirmative claims, do not belong in this second filed case.[43]

After the Third Circuit's remand on this Court's earlier dismissal, Imperium renewed its motion to dismiss and motion to transfer.  The Court denied Imperium's

---

[39]    D.I. 27.

[40]    D.I. 31. For instance, Samsung sought to have Imperium "reimburse" the damages awarded in Texas for "already-licensed products," and to enjoin Imperium from recovering any post-judgment relief for Samsung's continued sale of infringing products. *E.g.*, *id.* at ¶¶ 15, 68–69.

[41]    D.I. 36 (alternatively arguing for transfer under 28 U.S.C. §1404(a)).

[42]    D.I. 44 at 6; *see also* D.I. 45 (order).

[43]    D.I. 44 at 6, 11.

motion to dismiss, finding that the Texas Court's overruled decisions did not have res judicata effect.[44]  The Court also denied Imperium's motion to transfer requesting briefing specific to whether Samsung is an intended third-party beneficiary under *In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48 (3d Cir. 2018).[45]

## ARGUMENT

### I.  Legal Standard

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action "to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).  The party moving to transfer venue under section 1404(a) bears the burden of persuasion.  *See id*.  Although federal law controls the question of whether to enforce a forum selection clause, the "scope" of a forum selection clause is determined by state law.  *See id.* at 58.   The scope is " 'whether the claims and parties involved in the suit are subject' to the clause."  *Id*. (quoting *Collins v. Mary Kay, Inc*., 874 F.3d 176, 180 (3d Cir. 2017)).  Thus, state law "typically governs ... whether the clause applies to a non-signatory as an intended beneficiary or closely

---

[44] D.I. 88.
[45] D.I. 89.

related party." *Id.* Here, Samsung does not qualify as an intended beneficiary of the governing forum selection clause.

## II.   Samsung cannot satisfy the requirements of Delaware law to be considered a third-party beneficiary under the SLA.

Samsung is not a party to the SLA, and therefore has no rights under that agreement unless it is a third-party beneficiary to that agreement, which it is not. It is a "general rule that strangers to a contract ordinarily acquire no rights under it unless it is the intention of the promisee to confer a benefit upon such third party." *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 268 (Del. Ch. 1987). Under Delaware law, "demonstrating that a party is a third-party beneficiary requires proof of three elements: (1) an intent between the contracting parties to benefit a third party through the contract; (2) an intent that the benefit serve as a gift or in satisfaction of a preexisting obligation to the third party; and (3) a showing that benefiting the third party was a material aspect to the parties agreeing to contract." *Reserves Dev. LLC v. Severn Sav. Bank, FSB*, 2007 WL 4054231, at *18 (Del. Ch. Nov. 9, 2007); *see also Amirsaleh v. Board of Trade of the City of New York, Inc.*, 2008 WL 4182998, at *5 (Del. Ch. Sept. 11, 2008); *Madison Realty Partners 7, LLC v. AG ISA, LLC*, No. 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2011). Samsung cannot satisfy any of these elements and therefore is not a third-party beneficiary to the SLA and cannot claim the benefit of the SLA's forum selection clause.

12

**A.      There is no evidence that the contracting parties intended to benefit a third party through the contract**

First, there is no evidence that the contracting parties intended to benefit Samsung as a third party through the contract.  In contrast, the SLA explicitly disclaims all third-party rights except as expressly provided.  Section 6.7, titled "No Further License: No Third Party Rights," states:

> Nothing in this Agreement is intended to confer upon any Person, other than the Parties, their respective Affiliates, and their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.[46]

The parties to the SLA thus explicitly disclaimed "an intent . . . to benefit a third party through the contract."  *Reserves Dev.*, 2007 WL 4054231 at *18.

Where, as here, the parties' agreement explicitly disclaims third-party beneficiaries, those third parties have no rights to enforce the agreement's provisions.  *See Galvagna v. Marty Miller Constr., Inc.*, 1997 WL 720463, at *3 (Del. Super. Ct. Sep. 19, 1997) (owner of property not an intended third-party beneficiary to contract between general contractor and subcontractor where contract excluded third-party beneficiaries); *Empire Fire & Marine Insur. Co. v. Miller*, 2012 WL 1151030, at *5 (Del. Comm. Pl. Apr. 5, 2012) (party lacked standing where contract contained clear provision disclaiming intent to confer benefit on third parties).

---

[46]      SLA, D.I. 10-1 at 10 (§ 6.7).

To overcome Sony's and Imperium's agreed disavowal of third-party rights, the forum selection clause would necessarily be required to express an intent to benefit third parties. It does not. The forum-selection clause, section 6.5 of the SLA, sets forth rights and obligations for specifically defined parties only: the "Licensee" (Imperium) and "Licensor," (Sony, and its Affiliates). Third parties are granted no rights under the forum selection clause. As a result, because it was not explicitly granted rights by the parties, Samsung has no rights under the express terms of the SLA.

Delaware courts routinely enforce such third-party benefit disclaimer provisions and there is no reason not to here. *See United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 828 (Del. Ch. 2007) ("The Equity Commitment Letter explicitly disclaims that it confers rights on any third parties. Indeed, under New York and Delaware law, persons who are neither parties nor intended third party beneficiaries of a contract may not sue to enforce the contract's terms."); *see also Peter Schoenfeld Asset Management LLC v. Shaw*, 2003 WL 21649926, at *3 (Del. Ch. July 10, 2003) (stating that any suit by a corporation's board to enforce a stock purchase agreement between two stockholders would be "irrelevant to that contract, as [the corporation] had no rights thereunder," because of a "'No Third Party Beneficiaries'" provision); *Community Ass'n Underwriters of America v. Rhodes Dev. Group, Inc.*, 488 Fed. Appx. 547, 551 (3d Cir. 2012) ("More importantly, we

have held that a 'no contractual relationship' clause is evidence of the contracting parties' intent not to create any third party beneficiaries."); *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001) (holding that even though DuPont had negotiated the contract on behalf of its subsidiary, it was not an intended third-party beneficiary in part because the parties intended to benefit only the signatories).  No justification exists here for disregarding longstanding law and the contracting parties' express contractual language disclaiming third-party beneficiaries.

### B.   There is no evidence the contracting parties intended that a third-party benefit serve as a gift or satisfaction of a preexisting obligation to the third party

Second, there is no evidence that the contracting parties intended a third-party benefit to serve as a gift or satisfaction of a preexisting obligation to the third party. The Third Circuit has explained that under Delaware law, "if it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 196 (3d Cir.2001); *see also Eastman Chemical Co. v. AlphaPet Inc.*, 2011 WL 6004079, at *8 (D. Del. 2011).  Samsung has offered no evidence

4556038v.1

that the contracting parties intended to confer on third parties the right to enforce the SLA.

Just because a third-party may derive a benefit from performance of the parties under the contract does not render that party a third-party beneficiary. As the Court of Chancery held in *Insituform of N. Am., Inc.*, "[i]f, however, it was not the promisee's intention to confer direct benefits upon a third person, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then such third party beneficiary will be held to have no enforceable rights under the contract." 534 A.2d at 269. This is true here. Even if Samsung can claim some coincidental or incidental benefit to the SLA, that does not equate to it having enforceable rights under the agreement.

## C.   There is no evidence that benefiting the third party was a material aspect to the parties agreeing to contract

Third, there is no evidence that providing a third-party benefit was a material aspect of Imperium's and Sony's license agreement. In fact, because Imperium was in active litigation against other mobile phone manufacturers at the time – manufacturers that were similarly situated then as Samsung is now – there is significant evidence that third-party benefits were expressly *not* a material aspect to agreeing to the contract.

The context of Imperium's settlement with Sony strongly indicates that the parties did not intend to create third-party beneficiaries, as Samsung claims. To be

clear, "*both parties* must in some manner express an intent to benefit the third-party before third-party beneficiary status is found."  *Am. Fin. Corp.v. Computer Sciences Corp.*, 558 F. Supp. 1182, 1185 (D. Del. 1983) (emphasis added).  No such evidence exists here.  Furthermore, recognizing that Imperium settled with Sony on the eve of bringing suit against Samsung, contrary evidence abounds.

In 2011, Imperium brought a patent infringement action against Sony, Apple, Nokia, Kyocera, LG, Motorola, and Research in Motion.  All seven parties ultimately settled with Imperium in 2013.[47]  But at the time it settled, Sony was already supplying images sensors to at least Apple and Nokia,[48] both of whom settled with Imperium within months of Sony.  Imperium – and Sony – could not have intended to create the far-reaching third-party rights Samsung now claims or Imperium would have undercut its ability to settle with every company Sony supplied, parties with which Imperium was then actively negotiating.

---

[47]    *See* supra n.3.

[48]    *See* Ex. 1, Excerpt of Global and China CMOS Camera Module Industry Report, 2011-2012 (June 5, 2012) ("In 2011, the blockbuster in the CMOS image sensor industry was that Sony defeated Omnivision and won the iPhone 4S 8 megapixel main camera orders from Apple."); Ex. 2, *Sony owns an estimated 40.2 percent share of image sensor market*, Digital Photography Review (May 4, 2015) ("... the front and back sensors in Apple's iPhone 6 models, both made by Sony.")

17

### III.   The Eastern District of Texas is still the most appropriate forum for this dispute.

As this Court recognized in 2015, at the early stages of this litigation, "the initial (if not dispositive) issue, [] is, has Imperium asserted infringement [in] the Texas litigation against products covered by the Sony Agreement." Order Denying Samsung's Motion for Expedited Proceedings, D.I. 18 at 2.  This dispositive issue is still one that the Eastern District of Texas is best suited to assess as it reviewed all of the parties' extensive briefing, it reviewed the parties' expert reports, and it heard all of the parties' testimony in the prior litigation between Samsung and Imperium. In contrast, if this Court maintains this action, it will have to duplicate the effort and time already undertaken by the Eastern District of Texas.

First, Samsung has already consented to jurisdiction and venue in the Eastern District of Texas.  Indeed, the parties litigated the same issues and transactional facts without Samsung moving to transfer venue or any other such objection in Texas based on party or witness convenience.  As such, the private factors[49] here support

---

[49]   The private interest factors include "plaintiff's forum preference as manifested in the original choice, . . . the defendant's preference, . . . whether the claim arose elsewhere, . . . the convenience of the parties as indicated by their relative physical and financial condition, . . .  the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, . . .  and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)" *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995).

18

transfer of this Texas-related complaint to the court that presided over the Texas Action.

Second, the Eastern District of Texas has both an extensive knowledge of the issues and allegations raised by Samsung's SAC as well as an existing interest in adjudicating them, as that Court had jurisdiction over, heard all of the arguments relating to, resolved numerous disputes regarding, and presided over a <u>six day jury trial</u> in that hotly contested, four-year litigation.  Judicial economy plays a prominent role in the transfer analysis.  *See In re Amendt*, 169 Fed. App'x. 93, 96 (3d Cir. 2006) (describing "avoidance of duplicative litigation" as "the most important factor," where defendants in the first-filed case commenced a second action seeking another "bite at the apple" on already-litigated issue).   Indeed, in situations involving duplicative litigation, the Third Circuit and other courts have repeatedly found that judicial economy, or "the avoidance of duplicative litigation," is the "paramount" or "most important" factor in the § 1404(a) analysis.  *Freedom Mortg. Corp. v. Irwin Fin. Corp.*, 2009 WL 763899, at *6 (D. Del. Mar. 23, 2009) (relying on "Delaware's public policies promoting judicial efficiency and comity" in finding transfer of duplicative litigation warranted, despite Delaware forum-selection clause); *see also Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 2012 WL 3777423, at *2 (D. Del. Aug. 30, 2012) (same).

4556038v.1

Given the Texas Court's extensive familiarity with the same technology, same patents, same issues, and same parties, the "public policies of the fora" also strongly favor transfer.  The Eastern District of Texas has four years' experience handling the same transactional facts and issues that Samsung raises in its complaint here.  The Eastern District of Texas presided over the trial and other proceedings, and has extensive knowledge of the technology, the patents, the parties, and all the accused Samsung products.   It is also extensively familiar with—and has repeatedly considered—the issues related to Samsung's Sony-license theory, including interpretation of the asserted patent claims, Samsung's waiver, Samsung's allegations of "concealment," and Samsung's interpretations of contract provisions (e.g., the definition of "Covered Third Party Products").  *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 761 (E.D. Tex. 2016).  Considering these facts and the relevant authorities, the public-interest factors[50] strongly support transfer.

---

[50]   The public interest factors include "the enforceability of the judgment, . . . practical considerations that could make the trial easy, expeditious, or inexpensive, . . . the relative administrative difficulty in the two fora resulting from court congestion, . . . the local interest in deciding local controversies at home, . . .  the public policies of the fora, . . . and the familiarity of the trial judge with the applicable state law in diversity cases."  *Jumara,* 55 F.3d at 879.

4556038v.1

What this Court stated in 2017 remains true today: "the countervailing interests of avoiding a second district court reviewing the same issues carries the day."  Order on Motion to Dismiss, D.I. 44 at 9–10.

## CONCLUSION

For all of the foregoing reasons, Imperium requests that this Court transfer this case to the Eastern District of Texas.

STRADLEY RONON
STEVENS & YOUNG, LLP


*/s/ Joelle E. Polesky*
Joelle E. Polesky (ID No. 3694)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Tel: 302 295-4856
Email: jpolesky@stradley.com

*Attorneys for Defendant, Imperium IP Holdings (Cayman), Ltd.*

OF COUNSEL:

Gregory L. Ewing (to be admitted *pro hac vice*)
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202 204-3005
Email: gewing@potomaclaw.com

Dated: May 11, 2020

21