IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1059-CFC-CJB |
| | ) | |
| IMPERIUM IP HOLDINGS (CAYMAN), LTD., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## THIRD AMENDED AND SUPPLEMENTAL COMPLAINT

OF COUNSEL:
Jesse J. Jenner
Steven Pepe
Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Samuel L. Brenner
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006-6807
(202) 508 4600

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Plaintiff Samsung Electronics Co., Ltd.*

Dated: December 23, 2020

1

Plaintiff Samsung Electronics Co., Ltd. ("Samsung") alleges as follows for its Third Amended and Supplemental Complaint against Defendant Imperium IP Holdings (Cayman), Ltd. ("Imperium"):

## NATURE OF THE ACTION

1.    This is an action for breach of a contract that, upon information and belief, was negotiated at arms' length between Defendant Imperium and third parties Sony Corporation and Sony Mobile Communications (USA) Inc. (f/k/a Sony Ericsson Mobile Communications (USA), Inc.) (collectively, "Sony"), sophisticated parties that, upon information and belief, were represented at all times by counsel and who entered into a contract with the consent and advice of that counsel.  Samsung is a third-party beneficiary of the rights conveyed by Imperium to Sony under that contract.

2.    On March 30, 2011, Imperium filed a complaint in the United States District Court for the Eastern District of Texas, Sherman Division, against Sony Ericsson Mobile Communications (USA), Inc. ("Sony Mobile"), among other defendants, alleging infringement of five United States Patents.  Imperium's patent infringement case against Sony Mobile was assigned Civil Action No. 4:11-cv-163 ("the -163 action").

3.    Imperium and Sony entered into a confidential Settlement and License Agreement (referred to herein as the "Sony License Agreement") that granted rights to Sony and covered third parties (hereinafter "Licensee Third Parties").  In particular, under the terms of the Sony License Agreement, in exchange for payment of a negotiated, agreed-to amount, Imperium granted to Sony a license, release and covenant not to assert or enjoin Sony, its Affiliates and/or certain third parties, including Sony customers such as Samsung, with respect to patents owned by Imperium (the "Licensed Imperium Patents").  Upon information and belief, the execution of the

2

Sony License Agreement resolved all claims between the parties that were pending in the -163 action.

4.     The Sony License Agreement further identified the scope of the rights negotiated for by the parties and granted by Imperium with respect to third party products covered under the Sony License Agreement (hereinafter "Covered Third Party Products").  Importantly, Imperium and Sony agreed that Covered Third Party Products would receive the benefit of the license, release, and covenant not to assert.  Under the express terms of the Sony License Agreement, therefore, both Sony image sensors and third party products that operate in conjunction with, are offered for sale with, or otherwise benefit from incorporated Sony image sensors are licensed to the Licensed Imperium Patents.  Moreover, in the Sony License Agreement, Imperium covenanted not to assert the Licensed Imperium Patents, among others, against any such Covered Third Party Products, such as the Samsung products at issue here, and covenanted not to rely upon Sony image sensors to satisfy any element of any claim of the Licensed Imperium Patents in any subsequent lawsuit.  Upon information and belief, Sony negotiated for the inclusion of the license, release, and covenant, among other reasons, to benefit its customers, such as Samsung.  Accordingly, Samsung is a third-party beneficiary under the Sony License Agreement.

5.     On June 9, 2014, Imperium filed suit against Samsung in the Eastern District of Texas ("the -371 action").  In its complaint in that action, Imperium alleged that Samsung infringes the United States Patent Nos. 6,271,884; 6,836,290; and 7,092,029 (the "-371 Asserted Patents") by manufacturing, using, selling, offering for sale, and/or importing devices with image sensors or camera functionality.  The -371 Asserted Patents are Licensed Imperium Patents.  Some of the Samsung products accused in the -371 action include Sony sensors.

6.      Samsung filed its Answer in September 2014.  At that time, Imperium had not yet produced a copy of the Sony License Agreement—a confidential agreement—to Samsung.

7.      Under the Patent Local Rules governing the -371 action, Imperium was required to provide detailed infringement contentions early in the case.  In its initial disclosures, however, Imperium never, in the thousands of pages of contentions, identified a single Sony sensor as the basis for any infringement claim.  Imperium's contentions were never supplemented or amended during discovery to identify any Sony image sensors.  Then, at the completion of fact discovery on September 9, 2015, Imperium for the first time made clear that it was, in fact, relying on Sony sensors as part of its infringement case.

8.      Following completion of fact discovery in the -371 action on September 9, 2015, Imperium confirmed its breach of the Sony License Agreement when it provided its infringement contentions during expert discovery.  In particular, certain claims of the -371 Asserted Patents require an image sensor.  And certain of the Samsung accused products include only a Sony image sensor.  Accordingly, Imperium necessarily relied on licensed Sony image sensors to satisfy limitations of asserted claims, which is expressly prohibited by the terms of the Sony License Agreement, resulting in a breach of that agreement.

9.      Samsung promptly notified Imperium of its breach of the Sony License on September 24, 2015.  Imperium then further breached the Sony License Agreement when, instead of immediately taking steps to correct its violation as required, Imperium argued that Samsung had waived raising an affirmative defense based on the Sony License Agreement in the -371 action.

10.     After being notified that Imperium was alleging that Samsung products incorporating Sony sensors infringed certain Imperium patents, Sony sent a letter dated November 11, 2015, to Imperium advising Imperium of its breach of the Sony License Agreement.

Sony further provided a Samsung representative with a redacted copy of the Sony License Agreement, pursuant to section 6.2.8 of that Agreement. Sony itself also again communicated with Imperium regarding Imperium's apparent breach of and noncompliance with the Agreement. On January 12, 2016, Sony asked Imperium how Imperium's expert's position in the -371 action could be consistent with the Agreement. To Samsung's knowledge, Imperium never provided a substantive response to this communication.

11.     Trial in the -371 action commenced on February 1, 2016, and concluded on February 8, 2016. At Imperium's request, the Texas court did not permit Samsung to maintain a defense based on the Sony License Agreement during trial and instead reserved the issue for post-trial briefing. The jury returned a verdict of infringement on the -371 Asserted Patents (including by products that included Sony sensors), found one of the -371 Asserted Patents invalid, and awarded damages for the other two -371 Asserted Patents, including for infringement by products that use Sony sensors.

12.     After trial, Imperium argued and the Texas court found that Samsung had waived an affirmative defense based on the Sony License Agreement in the -371 action. As a result, the Texas court in the -371 action has not analyzed or interpreted the terms of the Sony License Agreement or otherwise adjusted damages to exclude products that use Sony sensors based on that Agreement.

13.     Once the jury found that Samsung's products practice claims of Imperium's patents, these products, to the extent they were not already licensed, automatically became licensed under an alternative definition of Covered Third Party Products in the Sony License Agreement. As a result, Imperium further breached the Sony License Agreement by maintaining its claim for and pursuing damages and ongoing royalties related to these products.

14.     Imperium further breached the Sony License Agreement by (1) seeking ongoing royalties in its post-trial motions for additional Samsung products that include Sony sensors and had been more recently released, and (2) relying on the similarity of image sensors (including Sony sensors) to argue that such additional products infringe the asserted claims of the Asserted Imperium Patents because they are not colorably different from the accused products that were found to be covered by the asserted claims of the -371 Asserted Patents.

15.     The Texas court ruled on all post-trial briefing in 2017.  The Texas court granted Imperium's request for ongoing royalties for all products-in-suit (including for products that use Sony sensors).  The Texas court also denied all Rule 50(b) JMOL motions and imposed enhanced damages, fees, and costs.

16.     Both parties appealed to the Court of Appeals for the Federal Circuit ("the Texas Appeals").  The Texas Appeals were coordinated with Imperium's appeals from the Patent Trial and Appeal Board ("PTAB"), which had found two of the -371 Asserted Patents to be invalid (collectively, with the Texas Appeals, "the Federal Circuit Appeals").

17.     On appeal, Imperium once again breached the Sony License Agreement by refusing to remedy its violation of the Sony License Agreement, instead maintaining that Samsung had waived any defense based on the Sony License Agreement.

18.     Imperium also breached the Sony License Agreement by relying on the similarity of image sensors to argue that the Texas court had erred in refusing to award ongoing royalties for additional products, including products that contain Sony sensors.

19.     The Federal Circuit Appeals have now been resolved in Samsung's favor. On January 9, 2019, the Federal Circuit affirmed the PTAB's decisions finding two of the -371 Asserted Patents to be invalid.  *Imperium (IP) Holdings v. Samsung Elecs. Co.*, 747 F. App'x 859

(Fed. Cir. 2019); *Imperium (IP) Holdings v. Samsung Elecs. Co.*, 747 F. App'x 862 (Fed. Cir. 2019). On January 31, 2019, the Federal Circuit found that the third -371 Asserted Patent was also invalid. Because all three patents were invalid, the Federal Circuit reversed the judgment of liability that had been entered against Samsung in the -371 action. The Federal Circuit also found that all the remaining issues, including whether Samsung had waived a defense based on the Sony License Agreement, were mooted by the reversal of liability. *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 757 F. App'x 974, 980 (Fed. Cir. 2019).

20.     Imperium petitioned for panel rehearing and rehearing en banc of the decision in the appeal from the -371 action. The Federal Circuit denied Imperium's petition on April 18, 2019. Mandate issued from the appeals in the -371 action on April 25, 2019.

21.     Imperium petitioned the United States Supreme Court for review of the Federal Circuit's decision on July 16, 2019. The Supreme Court denied Imperium's petition on October 7, 2019.

22.     On September 25, 2020, Imperium (under its new name, Pictos Technologies Inc.) filed a Complaint at the International Trade Commission, naming Plaintiff Samsung Electronics Co., Ltd., along with Samsung Electronics America, Inc. and Samsung Semiconductor, Inc., as proposed respondents. Imperium alleged patent infringement and trade secret misappropriation and requested an exclusion order to preclude Samsung from importing certain imaging devices and products (such as mobile phones and tablets) containing such devices.

23.     On October 23, 2020, Samsung alerted Imperium that Imperium had accused products, including the Galaxy A50, Galaxy Note 8, Galaxy S8+, Galaxy S9+, Galaxy Note 10, Galaxy S10+, Galaxy S20+, Galaxy S20 Ultra, and Galaxy Note 20 Ultra, that include one or more Sony image sensors of infringing certain Licensed Imperium Patents. Samsung

requested that Imperium withdraw its ITC complaint as to those Samsung products containing one or more Sony image sensors.

24.     Imperium filed an Amended Complaint with the ITC on October 26, 2020. Imperium did not address Samsung's concerns about the Sony License Agreement, but instead continued to allege patent infringement by Samsung.  Specifically, Imperium claimed infringement of U.S. Patent No. 6,838,651; U.S. Patent No. 7,323,671; U.S. Patent No. 7,064,768; and U.S. Patent No. 7,800,145 (collectively, the "-1231 Asserted Patents"), each of which is licensed under the Sony License Agreement.

25.     Rather than narrow the list of accused products to exclude those with one or more Sony image sensors from its allegations, Imperium accused even more products of infringement, including additional products that also contain one or more Sony image sensors.

26.     On October 29, 2020, after filing the Amended Complaint, Imperium responded to Samsung's letter, asserting that none of Samsung's products are protected from infringement allegations under the Sony License Agreement.

27.     On November 25, 2020, the ITC instituted an investigation (No. 337-TA-1231) to determine issues of alleged patent infringement and trade secret misappropriation.  The ITC set a 16-month target date for that investigation.

28.     Samsung has suffered significant harm from Imperium's repeated breach of the Sony License Agreement.  Ignoring its agreement with Sony, Imperium attempted to "double dip" in the -371 action by demanding damages and an ongoing royalty against Samsung based on the manufacture, use, and sale of products containing Sony image sensors that are immune from any infringement claim, because Imperium has already been compensated by Sony for these very same products.  Moreover, Samsung suffers new and significant harm from Imperium's recent

8

breach of the Sony License Agreement at the ITC, in which Imperium attempts to prevent Samsung from importing products that Imperium has already licensed and that are similarly immune from any infringement claim.  Samsung has been and continues to be injured in its business or property, including through potential loss of profits, revenue, customers and potential customers, goodwill and product image, as we as through the expense incurred through its need to defend against Imperium's improper claims of infringement in the -371 action and the -1231 Investigation.

29.     Based on its breach, under the express terms of the Sony License Agreement, Imperium is required to reimburse Sony and Samsung for the full amount of any damages recovery for these already-licensed products, along with reasonable costs and attorneys' fees caused or incurred in connection with Imperium's breach.   Despite this contractual commitment, however, Imperium (which was formerly a Cayman Islands corporation, but has since converted to a Delaware corporation) has no product business to provide revenue.   On information and belief, by virtue of its corporate structure and status as a non-practicing entity, Imperium has attempted to make itself judgment-proof, substantially eliminating any prospect for Samsung to recover its damages, fees and costs.

## **PARTIES**

30.     Plaintiff Samsung Electronics Co., Ltd. is a Korean company with its principal place of business at 416, Maetan 3-dong, Yeongtong-gu, Suwon-si, Gyeonggi-do 443-742, Korea.

31.     On information and belief, Defendant Imperium has a place of business at 400 Madison Avenue, Second Floor, New York, New York 10022.  On information and belief, though Imperium was originally incorporated in the Cayman Islands, Imperium has since converted to a Delaware Corporation named "Pictos Technologies Inc."

## JURISDICTION AND VENUE

32.     This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, excluding interest and costs, and this action is between a citizen of a state and a citizen of a foreign state.  In addition, under 28 U.S.C. §§ 2201-2202, a current, actual and justiciable controversy exists between the parties, making a declaratory judgment action appropriate.

33.     On information and belief, Defendant is subject to this Court's personal jurisdiction, consistent with principles of due process and the Delaware Long Arm Statute, at least because Defendant Imperium voluntarily entered into a binding Settlement and License Agreement containing a forum selection clause conferring exclusive jurisdiction with this Court, and that forms the basis for Plaintiff's claims in this action.

34.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2) and (c)(2).

## GENERAL ALLEGATIONS

### THE IMPERIUM-SONY LITIGATION AND SETTLEMENT AGREEMENT

35.     On March 30, 2011, Imperium filed a complaint in the United States District Court for the Eastern District of Texas, Sherman Division, against Sony Ericsson Mobile Communications (USA) Inc., among other defendants, alleging infringement of five United States Patents.

36.     Imperium's complaint alleged that Sony Mobile products that included image sensors infringed Imperium's five patents.

10

37.     Imperium and Sony (not just Sony Mobile) entered into a confidential Settlement and License Agreement.[1]  Upon information and belief, this Agreement settled Imperium's infringement claims, and Imperium's complaint against Sony Mobile was dismissed on May 10, 2013.

38.     The Sony License Agreement identified and defined third-party products covered by the terms of that Agreement.  In particular, the Sony License Agreement defined "Covered Third Party Products" to mean: "(i) Third Party products or services designed and marketed to operate in conjunction with or offered for sale or sold via a Licensed Product; or (ii) Third Party products or services that when running, using, operating within, or otherwise benefitting from the functionality of a Licensed Product is covered by any claim of the Licensed Patents."

39.     The Sony License Agreement also identified and defined the third parties (hereinafter "Licensee Third Parties") that are covered by that Agreement as "vendors, suppliers, manufacturers, developers, distributors, contractors, partners, hosts, dealers, resellers, retailers, value added resellers (VARs), original equipment manufacturers, maintenance and support service providers, purchasers, customers, and end-users of any Licensed Products or Covered Third Party Products but solely with respect to such Licensed Products or Covered Third Party Products.  For the avoidance of doubt, suppliers to Licensee of components (including, but not limited to, suppliers to Licensee of camera modules and imaging sensors at issue in the Litigation) are Licensee Third Parties under this agreement with respect to those components provided to Licensee (including those camera modules and imaging sensors provided to Licensee)."

---

[1]     A copy of this Agreement was filed under seal as Exhibit A to D.I. 10.

40.     The Sony License Agreement identified and defined the patents that are licensed ("Licensed Patents" or, as defined above, "Licensed Imperium Patents") to include United States Patent Nos. 6,271,884; 6,836,290; 6,838,651; 7,064,768; 7,092,029; 7,323,671; and 7,800,145.

41.     The Sony License Agreement identified and defined those products licensed (hereinafter "Licensed Products") to mean "any past, present, and future products, product lines, services, devices, systems, components, network, hardware, software, method, process, functionality, feature, technology, instruction, or other instrumentality or any combination of the foregoing, and other offerings of Licensee.  For avoidance of doubt, the inclusion of the term "licensed" in this definition does not convey the right to Licensee or its Affiliates to sub-License the Licensed Imperium Patents (except as otherwise provided herein).  For the avoidance of doubt, Licensed Products shall encompass products supplied to Licensee by its third party suppliers."

42.     Image sensors manufactured and/or sold by Sony are "Licensed Products" under the Sony License Agreement.

43.     The Sony License Agreement (§ 2.1) granted the following License: "Subject to the payment provided under Section 3 hereof, Licensor hereby grants to Licensee a fully paid-up, non-exclusive, non-sublicensable (except as provided in Section 5 below), nontransferable (except as provided in Section 5 below), perpetual, worldwide, irrevocable license under the Licensed Patents, to make, have made, use, import, export, distribute, sell (including loan and give away), offer for sale, provide, repair, maintain, support, dispose of, develop and advertise the Licensed Products and Covered Third Party Products.  Licensee Third Parties are licensed under this Agreement if and only to the extent they manufacture, repair, maintain, support, provide, distribute, sell, offer for sale, export, import, use or otherwise dispose of Licensed

Products and Covered Third Party Products with respect to such Licensed Products or Covered Third Party Products."

44.     The Sony License Agreement (§ 2.2) granted the following Release: "Effective upon the payment provided under Section 3 hereof, Licensor, and their successors and assigns, hereby voluntarily and irrevocably releases, acquits, and forever discharges (a) Licensee and its predecessors, successors, officers, directors, managers, members, employees, agents, experts, customers, suppliers, consultants and attorneys from any and all demands, damages, losses, attorneys' fees, court costs, causes of action, liability, or claims for relief (of any kind, manner, nature, and description, known or unknown) arising from or related to: (i) infringement of the Licensed Patents solely with respect to the Licensed Products and the Covered Third Party Products; (ii) the Litigation, including but not limited, to the claims and counterclaims asserted in, and the conduct of the, Litigation; and (iii) the conduct of settlement negotiations before the Effective Date (except for representations and obligations expressly included in this Agreement) and (b) Licensee Third Parties (past and present) from any and all demands, damages, causes of action, liability or claims for relief (of any kind, manner, nature and description, known or unknown) arising from or related to making, having, made, using, importing, exporting, distributing, selling, offering for sale, developing or advertising Licensed Products and Covered Third Party Products with respect to such Licensed Products and Covered Third Party Products."

45.     The Sony License Agreement (§ 2.4) stated that "Each Licensed Product and its provision, sale (including loan and give away), offer for sale, importation, exploitation, repair, maintenance, support, disposition and use shall remain licensed regardless of any subsequent transfers of such Licensed Product to or by any entity or individual."

46.     The Sony License Agreement (§ 2.6) granted the following Covenant Not to Assert or Enjoin: "Licensor, on behalf of itself, and its successors and assigns, covenants not to directly or indirectly, anywhere in the world, assert, make any claim, commence, or prosecute any lawsuit, action, or proceeding for infringement against any entity for infringement of the Licensed Patents with respect to Licensed Products or Covered Third Party Products.  Licensor, on behalf of itself, and its successors and assigns, further covenants not to rely on any Licensed Product or the exploitation thereof (in whole or in part) to satisfy any element of any claim of the Licensed Patents.  Licensor, on behalf of itself, and its successors and assigns, further covenants not to directly or indirectly seek, initiate, or pursue any legal remedy against Licensee including, without limitation, an order, prohibition, or injunction of any kind (e.g. a TRO, temporary or permanent injunction, exclusionary order) from any court or tribunal anywhere in the world that would in any way impair Licensee's ability to make, have made, use, sell (including loan and give away), offer for sale, provide, repair, maintain, support, dispose of, export, and import Licensed Products.  If Licensor or its successor or assignee, seeks a legal remedy in violation of the terms of this section, Licensor, its successor or assignee (as applicable) shall immediately take steps to correct the violation and shall reimburse Licensee, and customers and suppliers of Licensee, for all reasonable costs, fees, and damages caused or incurred in connection with the violation."

47.     The Sony License Agreement (§ 2.8) contained language excluding certain third parties, but qualified that exclusion as follows: "Excluded Party shall not, however, include any Licensee Third Parties with respect to Licensed Products or Covered Third Party Products (regardless of whether or not they are included in subsections (i)-(iii) of this Section 2.8) (by way of example and not of limitation, an Entity which is a purchaser or end-user of a Sony imaging sensor is not an Excluded Party with respect to that Sony imaging sensor)."

48.     The Sony License Agreement (§ 6.5) stated that "all disputes and litigation regarding this Agreement, its construction and matters connected with its performance be subject to the exclusive jurisdiction of the state and federal courts located in Delaware."

49.     The Sony License Agreement stated (§ 6.2.8) that "Licensee may disclose to its suppliers, customers, potential customers and other Third Parties with which it has a current or potential commercial relationship that it is licensed under the Licensed Patents and the extent to which it is licensed, provided that Licensee may not disclose any of the terms of consideration of Section 3.1 hereunder."

## THE -371 ACTION

50.     On June 9, 2014, Imperium filed a complaint alleging patent infringement against Plaintiff in the Eastern District of Texas.

51.     In its complaint, Imperium alleged that Samsung infringes United States Patent Nos. 6,271,884 ("'884 patent"); 6,836,290 ("'290 patent"); and 7,092,029 ("'029 patent") (the -371 Asserted Patents) by manufacturing, using, selling, offering for sale, and/or importing devices with image sensors or camera functionality.  These three patents are Licensed Imperium Patents under the Sony License Agreement.

52.     Samsung purchases image sensors from Sony for use in certain products, including products accused by Imperium of infringing the -371 Asserted Patents.

53.     Samsung sought expedited relief in this Court from Imperium's violation in the -371 action.  Imperium opposed Samsung's motion in this Court on the ground that the applicability of the Sony License Agreement would be best resolved in the -371 action, including because the Texas court in was familiar with the parties, the patents, and the technology.  Despite this, after this Court stayed the present case, Imperium repeatedly argued that the Texas court

should not consider the merits of Samsung's Sony License Agreement and instead argued that Samsung had waived any defense based on the Sony License Agreement.  Imperium argued this on multiple occasions, including on January 28, 2016, in its pre-trial brief, and on January 29, 2016 during the Pre-Trial Conference.

54.    At the Pre-Trial Conference on January 29, 2016, the Texas court deferred ruling on whether any defense based on the Sony License Agreement was waived until after trial.

55.    Trial commenced on February 1, 2016, and concluded on February 8, 2016. The jury found that one of the -371 Asserted Patents, the '290 patent, was invalid, and returned a verdict that certain of the accused products infringed the -371 Asserted Patents, including products that use Sony image sensors.  The jury awarded $4,840,772.00 in damages for infringement of the '884 patent and $2,129,608.50 in damages for infringement of the '029 patent.  No damages were awarded for infringement of the '290 patent.  The Federal Circuit has since affirmed the finding that the '290 patent was invalid, and vacated the infringement verdicts and damages awards.

56.    Following trial, the Texas court ordered briefing on issues related to the Sony License Agreement.  Imperium again argued that the Texas court should not consider the Sony License Agreement on grounds of waiver.  As a result, the Texas court has not analyzed or interpreted the terms of the Sony License Agreement, instead determining that Imperium had not concealed its reliance on Sony image sensors and that Samsung had waived an affirmative defense based on the Sony License Agreement.  The Federal Circuit has since vacated those findings of non-concealment and waiver as moot.

57.    On September 21, 2016, Imperium moved for an ongoing royalty for the accused Samsung products and future products.  On October 24, 2016, Imperium identified three

additional Samsung products for which it sought an ongoing royalty.  At least one of these models also uses a Sony image sensor.

58.     The Texas court denied all Rule 50(b) JMOL motions and also awarded enhanced damages based on a finding of willful infringement.  The Texas court also ordered that Imperium was entitled to an ongoing royalty, and ordered further briefing on the amount of the ongoing royalty and products so covered.

59.     Both parties filed Notices of Appeals with the Court of Appeals for the Federal Circuit, but these appeals were stayed pending resolution of Imperium's requested ongoing royalty in the -371 action.

60.     On June 2, 2017, Imperium argued that it was entitled to an ongoing royalty for additional Samsung-Sony products based on the fact that they contained the same image sensor.

61.     On September 13, 2017, the Texas court issued decisions setting the ongoing royalty rate for products-in-suit, but refused to extend the ongoing royalty to additional products.  The Texas court also granted Imperium's request for fees and costs.  The Federal Circuit has since vacated these awards because it found the -371 Asserted Patents invalid.

62.     The parties subsequently filed updated Notices of Appeal to the Federal Circuit to include the September 13, 2017 decision.  The Federal Circuit lifted the stay on October 4, 2017 and Samsung filed its opening brief in the cross-appeals from the -371 action on November 20, 2017.

63.     In January 2018, Imperium filed its opening brief in the cross-appeals from the -371 action.  Imperium's opening brief opposed Samsung's appeal of the Texas court's finding that Samsung had waived a defense based on the Sony License Agreement.  Imperium also argued that the waiver applied to ongoing royalties, such that it could collect ongoing royalties on

Samsung-Sony products.  Imperium's opening brief also argued that the district court erred by denying ongoing royalties for additional products beyond the products in suit, including those that contain Sony image sensors, because those products contain the same image sensors as the products in suit.

64.     The Federal Circuit held oral argument in the coordinated appeals from the -371 action and from the PTAB on January 8, 2019.

65.     The Federal Circuit ruled in Samsung's favor in the appeals from the -371 action and the PTAB.  On January 9, 2019, the Federal Circuit issued decisions affirming the PTAB's findings that the challenged claims of the '290 and '029 patents are invalid, including all claims asserted in the -371 action.  *Imperium (IP) Holdings v. Samsung Elecs. Co.*, 747 F. App'x 859 (Fed. Cir. 2019); *Imperium (IP) Holdings v. Samsung Elecs. Co.*, 747 F. App'x 862 (Fed. Cir. 2019).  On January 31, 2019, the Federal Circuit issued a decision reversing-in-part and affirming-in-part the judgment in the -371 action.  The Federal Circuit reversed with respect to the '884 patent, finding that the Texas court should have granted judgment as a matter of law of invalidity, and affirmed the jury's verdict of invalidity with respect to the '290 patent.  Because the asserted claims of all three patents had been found invalid, the Federal Circuit vacated the remaining findings, damages award, and fees judgment as moot.  *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 757 F. App'x 974, 980 (Fed. Cir. 2019).

66.     Because it was vacated as moot, there is no longer any finding in Texas with respect to the Sony License Agreement.

67.     Imperium did not petition for rehearing in its appeals from the PTAB.

68.     Imperium petitioned for panel rehearing and rehearing en banc in the appeals from the -371 action.  The Federal Circuit denied Imperium's petitions.  The Federal Circuit's mandate in the appeals from the -371 action issued on April 25, 2019.

69.     Imperium petitioned for a writ of certiorari, challenging the Federal Circuit's reversal of the judgment with respect to the '884 patent on July 16, 2019.  The Supreme Court denied Imperium's petition on October 7, 2019.

### THE -1231 INVESTIGATION

70.     On September 25, 2020, Imperium (under its new name, Pictos Technologies Inc.) filed a Complaint with the International Trade Commission, naming Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor as proposed respondents, alleging patent infringement and trade secret misappropriation, and requesting that the ITC institute an investigation.

71.     Although Samsung alerted Imperium that certain accused products identified in the Complaint are licensed under the Sony License Agreement because they include at least one Sony image sensor and requested that Imperium withdraw these assertions, Imperium filed an Amended Complaint on October 26, 2020, asserting the -1231 Asserted Patents—each of which is licensed under the Sony License Agreement

72.     In its Amended Complaint, Imperium asserted the -1231 Asserted Patents and requested an exclusion order against an expanded list of accused products, including those that Samsung identified as having Sony image sensors.  In disregard of Samsung's notice to Imperium that Imperium seeks to enforce the -1231 Asserted Patents against products containing Sony image sensors, Imperium reasserted in its Amended Complaint that it "does not seek exclusion of any

[Samsung's] products using digital imaging devices licensed pursuant to a valid licensing agreement."

73.     Indeed, Imperium made this statement despite its assertion in the same Amended Complaint that its "licensees," including Sony, "practice each of the [-1231] Asserted Patents."  As part of its complaint, Imperium thus represents that Sony image sensors (including the same image sensors that are in some accused Samsung products) practice the -1231 Asserted Patents.  Imperium's allegations for domestic industry (necessary for jurisdiction at the ITC) rely on the same assertions that underlie the applicability of the Sony License Agreement:  Samsung's products include Sony image sensors that practice the Licensed Imperium Patents.

74.     In a letter to Samsung's counsel on October 29, 2020, Imperium denied that Samsung or its products are entitled to protection under the Sony License Agreement. Samsung sent a second letter on November 6, 2020, concerning Imperium breach of the Sony License Agreement.  Imperium did not respond.

75.     The ITC instituted the -1231 Investigation on November 25, 2020, based on Imperium's allegations of patent infringement and trade secret misappropriation.  The ITC set a 16-month target date.

**IMPERIUM'S BREACH**

76.     Image sensors manufactured and/or sold by Sony are "Licensed Products" under the Sony License Agreement.

77.     Samsung purchases image sensors from Sony for use in certain products, including certain of the accused Samsung Products in both the -371 action and -1231 Investigation.

78.     The Sony image sensors are "Licensed Products" under the Sony License Agreement even after they are sold to Samsung.

79.     Samsung, because of its purchase and use of Sony image sensors, is a third-party beneficiary under the Sony License Agreement.

80.     Samsung, including its subsidiaries, as a customer and/or end user of Sony image sensors, is a "Licensee Third Party" under the Sony License Agreement with respect to any purchased Sony image sensors or any "Covered Third Party Products."

81.     Likewise, Samsung's subsidiaries, as, for example, vendors, suppliers, manufacturers, developers, distributors, contractors, partners, hosts, dealers, resellers, retailers, value added resellers (VARs ), original equipment manufacturers, maintenance and support service providers, purchasers, customers and/or end-users of Licensed Products and/or Samsung's Covered Third Party Products are also "Licensee Third Parties" under the Sony License Agreement with respect to those Covered Third Party Products and enjoy third-party beneficiary rights under the Sony License Agreement.

82.     Imperium has granted a license and release to Sony and its customers (including Samsung) for any Licensed Products or Covered Third Party Products, and, as part of that license, covenanted not to rely on any Licensed Product (such as Sony image sensors) "or the exploitation thereof" to "satisfy any element of any claim" of any of the Licensed Imperium Patents.

83.     Imperium has accused Samsung products of infringement, including Samsung products that use only Sony image sensors.

84.     Imperium has necessarily relied upon Sony image sensors to satisfy at least one element of at least one claim of at least one -371 Asserted Patent.

85.     Imperium has relied upon the inclusion of Sony image sensors in Samsung products and that those Sony image sensors practice the -1231 Asserted Patents in support of its domestic industry theory in the -1231 Action.

86.     "Covered Third Party Products" are defined by the Sony License Agreement as "(i) Third Party products or services designed and marketed to operate in conjunction with or offered for sale or sold via a Licensed Product; or (ii) Third Party products or services that when running, using, operating within, or otherwise benefitting from the functionality of a Licensed Product is covered by any claim of the Licensed Patents."

87.     The accused Samsung-Sony Products are "Covered Third Party Products" under the Sony License Agreement. First, the accused Samsung-Sony Products are "Covered Third Party Products" under the first definition because the accused Samsung-Sony Products are "designed and marketed to operate in conjunction with . . . a Licensed Product," namely the Sony image sensors.  Second, under Imperium's theory in the -371 action that the accused Samsung-Sony Products infringe the -371 Asserted Patents, then they are "Covered Third Party Products" under the second definition as products that are "covered by [a] claim of the Licensed Patents." Third and similarly, under Imperium's domestic industry theory in the ITC that certain Sony image sensors practice the -1231 Asserted Patents, any accused Samsung product using these image sensors is necessarily a "Covered Third Party Product" under the second definition for the same reason.

88.     Because Samsung's products with Sony sensors are Covered Third Party Products, Imperium has breached the Sony License Agreement by asserting that such products infringe the patents asserted in the -371 action; by maintaining this assertion after the jury verdict;

and, most recently, by asserting that such products infringe the patents asserted in the -1231 Investigation.

89.     Imperium has opposed taking any steps to remedy its breach of the Sony License Agreement.   Imperium argued to this Court that this Court should not resolve the applicability of the Sony License Agreement because the license's applicability should be resolved in the -371 action.   But Imperium then argued in the -371 action that the license's applicability should not be resolved in the -371 action either, under a theory of waiver.   Imperium repeated its opposition in post-trial motions for ongoing royalties, and again on appeal.   Imperium now compounds the issue by seeking to assert additional patents licensed under the Sony License Agreement against Samsung products incorporating Sony image sensors in the -1231 Investigation.

90.      Imperium has also repeatedly breached and continues to breach the Sony License Agreement by seeking to transfer this lawsuit out of the District of Delaware, despite its agreement to litigate disputes concerning the Sony License Agreement in Delaware.

## CLAIMS FOR RELIEF

### COUNT ONE
### (Breach of Contract)

91.     Samsung re-alleges and incorporates by reference its allegations set forth in Paragraphs 1-90 above.

92.     As described above, Imperium and Sony entered into a Settlement and License Agreement, in which Imperium agreed to grant a license and release to Sony and its customers, including Samsung, for any Licensed Products or Covered Third Party Products.

93.     As part of that Sony License Agreement, Imperium covenanted not to "assert, make any claim, commence, or prosecute any lawsuit, action, or proceeding for

infringement of the Licensed Patents with respect to Licensed Products or Covered Third Party Products."  Samsung products with Sony image sensors are "Covered Third Party Products" under both alternative definitions of this term.

94.     Imperium further covenanted not to rely on any Licensed Product (such as Sony image sensors) "or the exploitation thereof" to "satisfy any element of any claim" of any of the Licensed Imperium Patents.

95.     Imperium also covenanted that if it "s[ought] a legal remedy in violation" of the terms identified *supra* in Paragraph 40, it "shall immediately take steps to correct the violation."

96.     Sony customers, including Samsung, are beneficiaries of the License, Release, and Covenant Not to Assert or Enjoin provisions of the Sony License Agreement.

97.     Pursuant to the Sony License Agreement, third parties, such as Samsung, which purchase Sony image sensors, are Third Party Licensees and have the protections outlined in the Sony License Agreement as third parties, without any other obligation to Sony.

98.     This benefit to third-party purchasers of Sony image sensors, like Samsung, was and is a material part of the Sony License Agreement.

99.     Imperium breached its contractual commitment by accusing Samsung products that operate in conjunction with, are offered for sale with, or otherwise benefit from an incorporated Sony image sensor of infringement of the Asserted Imperium Patents, including by relying on Sony image sensors to attempt to satisfy elements of claims of Licensed Imperium Patents.

100.    Once the jury in the -371 action found that Samsung products with Sony sensors practice the claims of Imperium's patents, Imperium further breached its contractual

commitment by refusing to acknowledge that such products are Covered Third Party Products under the Sony License Agreement and by maintaining its claim that such products infringe and that it is entitled to damages for such infringement.

101.    Imperium further breached its contractual commitment by failing to "immediately take steps to correct" its violation, instead arguing in the -371 action that Samsung had waived invoking the protections of the Sony License Agreement as a defense.

102.    Imperium further breached its contractual commitment by seeking ongoing royalties for accused Samsung products containing Sony image sensors, including those that the jury determined are "covered by [a] claim of the Licensed Patents," and so necessarily are "Covered Third Party Products" under the second definition of that term in the Sony License.

103.    Imperium further breached its contractual commitment by seeking ongoing royalties for certain of Samsung's new products that Imperium argues are no more than "colorable variations" of the products in the -371 action because they use the same image sensors.

104.    Imperium further breached its contractual commitment by repeating these arguments on appeal.

105.    Imperium further breached its contractual commitment by asserting certain Licensed Imperium Patents against Samsung products containing one or more Sony image sensors in the Complaint in the -1231 Investigation.

106.    Imperium further breached its contractual commitment by failing to remedy its breach and instead by asserting Licensed Imperium Patents against Samsung products containing one or more Sony image sensors in the Amended Complaint in the -1231 Investigation, despite Samsung's notice of the breach to Imperium.

107.     As a result of this contractual breach (including of at least §§ 2.1, 2.2, and 2.6 of the Sony License Agreement), Samsung has been and continues to be injured in its business or property, including without limitation potential loss of profits, revenue, customers and potential customers, goodwill and product image, and expense incurred through its continued need to defend against Imperium's improper claims of infringement.

## COUNT TWO
### (Declaratory Judgment)

108.     Samsung re-alleges and incorporates by reference its allegations set forth in Paragraphs 1-107 above.

109.     There is a dispute between the parties concerning whether Imperium breached its contractual obligations in the Sony License Agreement by accusing Samsung products that operate in conjunction with, are offered for sale with, or otherwise benefit from incorporated Sony image sensors of infringing the Licensed Imperium Patents.

110.     There is a dispute between the parties concerning whether Imperium breached its contractual obligations in the Sony License Agreement by seeking ongoing royalties for Covered Third Party Products that were accused products in the -371 action.

111.     There is a dispute between the parties concerning whether Imperium breached its contractual obligations in the Sony License Agreement by seeking ongoing royalties for certain of Samsung's products that are Covered Third Party Products.

112.     There is a dispute between the parties concerning whether Imperium is breaching its contractual obligations in the Sony License Agreement by seeking an exclusion order in the -1231 Investigation for certain of Samsung's products that are Covered Third Party Products.

113.     The disputes are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

114.    By arguing waiver in the -371 action and on appeal, and by filing a Petition for Certiorari with the U.S. Supreme Court, Imperium has breached and made clear it will continue to breach its contractual obligation to "immediately take steps to correct the violation" of its contractual obligations absent intervention from this Court.

115.    By asserting that the -1231 Investigation does not seek to exclude products using Sony image sensors (or "digital imaging devices licensed pursuant to a valid licensing agreement") while simultaneously asserting claims against products that Samsung has explained have at least one Sony image sensor, Imperium has breached and continues to breach its contractual obligation to "immediately take steps to correct the violation" of its contractual obligations absent intervention from this Court.

116.    Samsung therefore seeks declaratory judgment that Imperium has breached its contractual obligations to third-party beneficiary Samsung by bringing and maintaining a patent infringement claim with respect to the patents asserted in the -371 action against Samsung products that operate in conjunction with, are offered for sale with, or otherwise benefit from at least one incorporated Sony image sensor.

117.    Samsung further seeks declaratory judgment that Imperium has breached its contractual obligations to third-party beneficiary Samsung by seeking ongoing royalties in a patent infringement claim with respect to the Asserted Imperium Patents against Covered Third Party Products.

118.    Samsung further seeks declaratory judgment that Imperium has breached its contractual obligations to third-party beneficiary Samsung by bringing and maintaining a patent infringement claim with respect to the patents asserted in the -1231 Investigation against Samsung

products that operate in conjunction with, are offered for sale with, or otherwise benefit from at least one incorporated Sony image sensor.

## PRAYER FOR RELIEF

WHEREFORE, Samsung prays for a judgment that:

A.     Imperium is liable for breach of contract;

B.     Samsung is a third-party beneficiary of the Sony License Agreement;

C.     Samsung is a Licensee Third Party with respect to its products that operate in conjunction with, are offered for sale with, or otherwise benefit from any incorporated Sony image sensor;

D.     Imperium has breached its contractual obligations to Samsung by maintaining its claim of infringement of any Licensed Imperium Patent against Covered Third Party Products and Samsung products that operate in conjunction with, are offered for sale with, or otherwise benefit from at least one incorporated Sony image sensor;

E.     Imperium is enjoined preliminarily and permanently from maintaining any claim of infringement of any Licensed Patent against any Covered Third Party Product and any Samsung product that contains at least one incorporated Sony image sensor, including in the -1231 Investigation;

F.     Imperium shall pay to Samsung the amount of damages that Samsung proves at trial;

G.     Samsung shall recover its expenses, costs, and attorneys' fees in accordance with Rule 54(d) of the Federal Rules of Civil Procedure and/or Imperium's contractual obligations to Samsung;

H.      Samsung shall receive such other and further relief as the Court deems just

and proper.

## JURY DEMAND

Samsung demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ John W. Shaw

| | |
|---|---|
| OF COUNSEL: | John W. Shaw (No. 3362) |
| Jesse J. Jenner | Andrew E. Russell (No. 5382) |
| Steven Pepe | SHAW KELLER LLP |
| Kevin J. Post | I.M. Pei Building |
| Alex E. Middleton | 1105 North Market Street, 12th Floor |
| ROPES & GRAY LLP | Wilmington, DE 19801 |
| 1211 Avenue of the Americas | (302) 298-0700 |
| New York, NY 10036 | jshaw@shawkeller.com |
| (212) 596-9000 | arussell@shawkeller.com |

Samuel L. Brenner
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

*Attorneys for Plaintiff Samsung Electronics Co., Ltd.*

Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
(202) 508-4600

Dated:  December 23, 2020