IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1059-CFC-CJB |
| | ) | |
| IMPERIUM IP HOLDINGS (CAYMAN), | ) | **PUBLIC VERSION** |
| LTD., | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF SAMSUNG ELECTRONICS CO., LTD.'S
### OPENING BRIEF IN SUPPORT OF
### <u>MOTION FOR PRELIMINARY INJUNCTION</u>

OF COUNSEL:
Jesse J. Jenner
Steven Pepe
Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Samuel L. Brenner
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807

Dated: December 22, 2020

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff Samsung
Electronics Co., Ltd.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INDEX TO APPENDIX OF EXHIBITS.............................................v

I.      NATURE AND STAGE OF PROCEEDINGS................................3

II.     SUMMARY OF ARGUMENT..................................................4

III.    STATEMENT OF FACTS......................................................5

      A.      The Sony License Agreement ............................................5

            1.      Sony Pays Imperium for a Broad License to Protect Its
                    Customers, Including Samsung ....................................5

            2.      The SLA ████████████████ to Protect Licensee
                    Third Parties............................................................8

            3.      The SLA Mandates Delaware as the Exclusive Forum.............9

      B.      Imperium Breaches the SLA Again by Accusing Licensed Products of
           Infringement in the ITC..................................................10

IV.     ARGUMENT....................................................................11

      A.      Governing Law and Legal Standard ...................................11

      B.      Samsung Is Likely To Succeed on the Merits......................12

            1.      The SLA Is a ███████████████ to Imperium's ITC
                    Infringement Allegations Against Samsung Products That
                    Include Sony Image Sensors.......................................12

            2.      Samsung Is Likely to Prevail on a Claim for Breach of Contract
                    Against Imperium for Again Violating the SLA ....................15

            3.      This Court Is the Exclusive Forum for *All* Disputes Concerning
                    the SLA, Including Imperium's ITC Infringement Claims ......16

      C.      Absent a Preliminary Injunction, Samsung Will Suffer Irreparable
           Harm ......................................................................18

      D.      The Balance of Hardships Favors Samsung.........................20

      E.      The Public Interest Favors an Injunction ............................21

CONCLUSION.......................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atlantic Marine Constr. Co. v. U.S. Dist. Ct. of the W. Dist. of Tex.*,
    571 U.S. 49 (2013) ............................................................................21

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012) ..................................................19, 20

*Ciena Corp v. Nortel Networks Inc.*,
    No 2:05-CV-14, 2005 WL 1189881 (E.D. Tex. May 19, 2005) .......................17

*General Protecht Grp., Inc. v. Leviton Mfg. Co.*,
    651 F.3d 1355 (Fed. Cir. 2011) ..................................................*passim*

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ............................................................................22

*Insituform of N. Am. v. Chandler*,
    534 A.2d 257 (Del. Ch. 1987) ............................................................12

*Jacobs v. Nintendo of Am., Inc.*,
    370 F.3d 1097 (Fed. Cir. 2004) ..........................................................13

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ........................................................12, 20

*Qualcomm Inc. v. Broadcom Corp.*,
    No. 05CV1662-B, 2006 WL 8455598 (S.D. Cal. Feb. 13, 2006) .....................17

*Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*,
    335 F.3d 235 (3d Cir. 2003) ..............................................................22

*Tessera, Inc. v. Advanced Micro Devices, Inc.*,
    No. C-05-4063-CW, 2007 WL 3232441 (N.D. Cal. Nov. 1, 2007).......17, 19, 20

*Texas Instruments Inc. v. Tessera, Inc.*,
    231 F.3d 1325 (Fed. Cir. 2000) ..................................................*passim*

*Triple C Railcar Serv., Inc. v. City of Wilmington*,
    630 A.2d 629 (Del. 1993) ..................................................................12

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) ..................................................................16

**Statutes**

19 U.S.C. § 1337(d)-(e) ...........................................................................19

**Other Authorities**

85 Fed. Reg. 77,238-39 (Dec. 1, 2020)....................................................10

Fed. R. Civ. P. 30(b)(6)..............................................................................7

Fed. R. Civ. P. 65(c)..................................................................................22

All emphases in text are added unless otherwise noted.

## INDEX TO APPENDIX OF EXHIBITS

| DESCRIPTION | APPENDIX RANGE |
|---|---|
| 2020-12-22 - Declaration of Jonathan Ference-Burke and List of Samsung Products with Sony Sensors Accused of Infringement in ITC-1231 First Amended Complaint | **A001** |
| 2013-05-00 - Imperium/Sony Settlement and License Agreement | **A003** |
| 2014-09-21 - Why Is Sony's Mobile Business in the Red | **A024** |
| 2014-09-14 - Is Sony's Mobile Business Really Struggling | **A033** |
| 2015-12-14 - Sony Consolidates Its Leading Position in Global CMOS Image Sensor Market | **A039** |
| 2020-02-17 - Research Firm Claims Sony Had Nearly Half of the Image Sensor Market Share in 2019 | **A042** |
| 2013-02-26 - Email ██████████ (PICTOS_DE_000089) | **A049** |
| 2013-02-27 - ████ Email t██████████ ██████ (PICTOS_DE_000099) | **A053** |
| 2013-04-08 - ████████ Email ████ ████████████████████ (PICTOS_DE_000394) | **A054** |
| 2020-12-07 - Selected Pages from the Transcript of the Deposition of Vincent Capone | **A095** |
| 2020-09-25 - ITC-1231 Complaint (PUBLIC) | **A103** |
| 2020-10-26 - ITC-1231 First Amended Complaint (PUBLIC) and Ex. 38 | **A149** |
| 2020-10-23 - Pepe Letter to Ewing Regarding Sony (SAM-1059_000053409) | **A205** |
| 2020-10-29 - Ewing Letter to Pepe Regarding Sony (SAM-1059_000005212) | **A207** |
| 2020-11-06 - Pepe Letter to Ewing Regarding Sony (SAM-1059_000005214) | **A209** |
| 2020-12-01 - Federal Register Notice Regarding ITC-1231 Institution (SAM-1059_000006529) | **A212** |

| DESCRIPTION | APPENDIX RANGE |
|---|---|
| 2020-12-18 - Declaration of Kenneth Parulski and Selected Pages from his Expert Report Regarding Sony Image Sensors in Samsung Products | **A214** |
| 2020 - Statista Smartphone Sales 2016-2020 | **A243** |
| 2020-01-09 - Smartphone Brand Loyalty Is Rare Beyond Apple and Samsung, Says IHS Markit | **A244** |

Samsung asks this Court to enjoin Imperium IP Holdings (Cayman), Ltd., now known as Pictos Technology, Inc. ("Imperium"), from pursuing patent infringement claims against certain Samsung products in the International Trade Commission ("ITC") because Imperium's ITC action clearly violates a license agreement (the "Sony License Agreement" or "SLA") between Imperium and Sony Ericsson Mobile Communications (USA) Inc. ("Sony Mobile") and Sony Corporation (together, "Sony"). Samsung's products are licensed under the agreement, which specifies that any related disputes—including patent infringement actions—must be brought in this Court.

Sony entered into the SLA for the benefit of Sony and Sony's customers, including Samsung.[1] The SLA provides a broad license to Imperium's portfolio of imaging patents and covers Sony-manufactured components that Sony customers, including Samsung, purchase to incorporate into their own products. Many well-known Samsung phones and tablets use licensed Sony image sensors.

The SLA includes comprehensive protections for Sony customers. In particular, Imperium extended the SLA's broad license, release, and covenant-not-to-assert provisions to "Licensee Third Parties" for "Covered Third Party Products." Imperium agreed that Licensee Third Parties may plead the SLA "█

---

[1] Samsung's Appendix of Exhibits, filed herewith, contains all exhibits to this brief. Pinpoint citations to these exhibits appear as A____. The SLA appears at A003-23.

1

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ ." A005-06 (§ 2.3).  Consistent with this

provision, SLA § 2.6 permits "customers and suppliers of Licensee [i.e., Sony]" to

obtain judicial recourse if Imperium "seeks a legal remedy in violation" of the

covenant not to assert.  A006.

The SLA also includes a mandatory forum selection clause giving this Court

"exclusive jurisdiction" over "all disputes and litigation regarding [the SLA], its

construction[,] and matters connected with its performance" and "any

disputes…arising with respect to the subject matter of this Agreement."  A012

(§ 6.5).  Under Federal Circuit precedent, patent infringement claims relating to

patents licensed under the SLA are "connected with its performance" and "arise[e]

with respect to the subject matter" of the SLA, and must be brought here.  Notably,

Imperium explicitly *waived* any challenge to this jurisdiction.  A012 (§ 6.5).

Samsung filed this case in 2015 seeking damages after Imperium breached

the SLA by pursuing patent infringement litigation against Samsung in Texas.

That litigation ended in Samsung's favor in 2019, but throughout that case,

Imperium maintained infringement allegations that violated the SLA.  Imperium

has breached the SLA again by filing new infringement claims at the ITC based on

licensed patents against Samsung, accusing Samsung products that, once again, contain licensed Sony image sensors. Under binding precedent and the SLA's plain language, this Court should issue a preliminary injunction barring Imperium from pursuing those infringement claims outside of this Court, which has "exclusive jurisdiction" over them.[2]

All preliminary injunction factors decisively favor Samsung. Most importantly, Samsung can show a strong likelihood that (1) Imperium's ITC infringement allegations target Samsung products covered by the SLA, (2) the SLA requires those claims to be litigated in this Court, and (3) Samsung will prevail on its breach-of-contract claim. A preliminary injunction is necessary to prevent the irreparable harm Samsung would face from defending licensed products from possible exclusion from importation in a forum not contemplated by the SLA. Imperium will face no particular hardship from complying with its promise to litigate in this Court, and enforcing forum selection clauses is undoubtedly in the public interest.

## I.     NATURE AND STAGE OF PROCEEDINGS

Samsung filed its Complaint for breach of the SLA based on Imperium's unsuccessful assertion of certain patents against Samsung in Texas. *See* Second

---

[2] Imperium filed other claims at the ITC that are not subject to the SLA, such as trade secret claims and patent infringement claims against non-licensed products. Samsung does not seek to enjoin Imperium from pursuing those claims.

3

Amended and Supplemental Complaint ("SASC"), D.I. 63.  On March 2, 2020, the Court denied Imperium's motion to dismiss.  D.I. 88.  Discovery is due to be complete on February 1, 2021, and dispositive motions are due on March 8, 2021. D.I. 101 at 2, 7.[3]

## II.    SUMMARY OF ARGUMENT

1.    The Court should enjoin Imperium from participating in the ITC investigation with respect to patent infringement assertions involving Samsung products licensed under Imperium's patents.  The SLA gives Samsung a "complete defense" to infringement claims against Samsung products that incorporate Sony image sensors.

2.    The SLA includes an expansive, mandatory forum selection clause giving this Court "exclusive jurisdiction" over the infringement claims Imperium filed at the ITC.

3.    Samsung is likely to prevail in showing that this dispute must be brought in this Court and that Imperium breached the SLA by pursuing infringement claims in the ITC.

4.    The other preliminary injunction factors also favor Samsung.

_____

[3] After denial of its second motion to transfer to E.D. Texas (D.I. 89), Imperium filed a third transfer motion (D.I. 100) on May 11, 2020.  Samsung opposed, including in part because Imperium recently revealed it has been a Delaware corporation named Pictos Technologies, Inc. since April 2018.  D.I. 107 at 2-3. That third motion is pending.

## III.   STATEMENT OF FACTS

### A.   The Sony License Agreement

#### 1.   Sony Pays Imperium for a Broad License to Protect Its Customers, Including Samsung

In 2011, Imperium asserted five imaging patents against mobile phones sold by Sony Mobile. *See* A003 (1st Recital). Sony Mobile eventually settled and, with its parent Sony Corporation, entered into the SLA with Imperium. *Id.*

In 2011, Sony Mobile's mobile phone U.S. market share was small. *See* A024-32, A033-38. Sony Corporation, however, was (and remains) a significant supplier of image sensors, including to Samsung. *See* A039-41, A042-A48. Sony Corporation was not a party to the lawsuit, but it became a party to the SLA so it could receive a license and release for image sensors and other components that it sells to customers for use in their own devices. As detailed below, the SLA's terms are clear on their face and provide comprehensive protection for Sony's customers. Related evidence confirms that protecting Sony customers—including Samsung, named specifically in the SLA—was a primary consideration for Sony.

The SLA's recitals expressly state that the parties discussed ████████ ███████████████████████████████████████ but that ████████████████████ ████████████████████████████████████████████████████ A003 (Recitals 2 & 4), A007 (§ 3.1). This aligns with contemporaneous communications—although Imperium's suit was limited to Sony Mobile's phones,

an internal Imperium email reflects that ███████████████████████

██████████  A049.  Imperium emails also indicate that ████████████

███████████████████████████████████████████

████████████████████████████  A051-52.

The parties ██████████████████████████████████

███████████████  A054, A075, A079. ██████████████████████

██████████████  SLA § 2.8, which makes clear that a "purchaser or end-user of a

Sony imaging sensor is not an Excluded Party with respect to that Sony imaging

sensor." A079.

The SLA contains broad licensing, release, and covenant-not-to-assert

provisions for Sony customers with respect to Imperium's imaging patents.

Section 2.1 (A005) grants Sony's customers "a fully paid up…irrevocable license"

to make and sell "Covered Third Party Products":

> Licensee Third Parties are licensed under this Agreement if and
> only to the extent they manufacture, repair, maintain, support,
> provide, *distribute, sell, offer for sale, export, use, or otherwise
> dispose* of Licensed Products and *Covered Third Party Products*
> with respect to such Licensed Products or Covered Third Party
> Products.

The definition of "Licensed Products" includes the Sony image sensors sold

to Samsung for use in its products. A004. To avoid doubt, the SLA makes clear

that Licensed Products remain licensed even in the hands of Sony's customers, like

Samsung. *See* A006 (§ 2.4) ("Each Licensed Product…shall remain licensed

regardless of any subsequent transfers of such Licensed Product…."); *see also* A006-07 (§ 2.8) (providing that Third Party rights under the license "extend to the provision of goods and the exploitation of goods provided by…Licensee [Sony]").

Indeed, ███████████████████████████████████████████████████

██████████████████████████ A100 (247:9-16).

The SLA's definition of "Covered Third Party Products" also covers Samsung products using Sony image sensors:

> "Covered Third Party Products" means (i) Third Party products or services designed and marketed to operate in conjunction with or offered for sale or sold via a Licensed Product; or (ii) Third Party Products or services that when running, using, operating within, or otherwise benefiting from the functionality of a Licensed Product is covered by any claim of the Licensed Patents.

A004.

In keeping with its license obligations, Imperium promised not to sue Sony customers, like Samsung, based on Licensed Products or Covered Third Party Products:

> [Imperium covenants] not to directly or indirectly, anywhere in the world, assert, make any claim, commence, or prosecute any lawsuit, action, or proceeding for infringement against *any entity for infringement* of the Licensed Patents *with respect to* Licensed Products or *Covered Third Party Products*….

A006 (§ 2.6).  Imperium further promised "not to rely on any Licensed Product or the exploitation thereof…to satisfy any element of any claim of the Licensed Patents." *Id.*

Imperium also agreed that "Licensee Third Parties are licensed…to the extent they manufacture…sell [or] offer for sale…Licensed Products and Covered Third Party Products" (A005 (§ 2.1)), and Imperium released "Licensee Third Parties" from all liability for selling "Covered Third Party Products" (A005 (§ 2.2)).

To give these provisions even more bite, Imperium agreed that if it "seeks a legal remedy in violation of" the covenant not to assert, it "shall reimburse Licensee, and customers…of Licensee, for all reasonable costs, fees, and damages caused or incurred in connection with the violation."  A006 (§ 2.6).

Samsung is an SLA third-party beneficiary based on "its purchase and use of Sony image sensors."  SASC ¶ 66.  Although the SLA disclaims third-party rights "except as expressly provided," A012 (§ 6.7), the SLA expressly *excludes* from its definition of "Excluded Party" any "Licensee Third Parties with respect to Licensed Products or Covered Third Party Products," A006-07 (§ 2.8).  Indeed, language ██████████████████████████ confirms that "a purchaser...of a Sony imaging sensor [*e.g.*, Samsung] is *not* an Excluded Party with respect to that Sony imaging sensor."  A006-07 (§ 2.8).

### 2.    The SLA ████████████████ to Protect Licensee Third Parties

Confirming the broad protections for Sony customers, Imperium agreed to an expansive provision permitting a Licensee Third Party, like Samsung, to invoke

the SLA ██████████████, and as a ██████████████████ against

proceedings in any conceivable venue:



A005-06 (§ 2.3).

### 3.    The SLA Mandates Delaware as the Exclusive Forum

The SLA's mandatory forum selection clause (the "FSC") unambiguously

gives Delaware "exclusive jurisdiction" over "all disputes and litigation regarding

[the] Agreement, its construction and matters connected with its performance" and

"any disputes…arising with respect to the subject matter of this Agreement":

> Licensor and Licensee agree (a) that *all disputes and litigation*
> *regarding this Agreement*, its construction and matters connected with
> its performance be subject to the *exclusive jurisdiction of the state and*
> *federal courts located in Delaware* (the "Court"), and (b) to submit
> any disputes, matters of interpretation, controversies, or enforcement
> actions arising with respect to the subject matter of this Agreement
> exclusively to the Court.  The Parties hereby *waive any challenge to*
> *the jurisdiction or venue of the Court* over these matters.

A012  (§ 6.5).   Notably, ████████████████████████████████

████████████████   give *this Court* (and not Texas) "exclusive jurisdiction."

*See* A084.  As explained below, Federal Circuit precedent makes clear that patent

infringement suits are subject to such clauses.

**B.      Imperium Breaches the SLA Again by Accusing Licensed Products of Infringement in the ITC**

After extinguishing all possible appeals from its loss in the Texas litigation, on September 25, 2020, Imperium filed a complaint with the ITC, alleging in part that Samsung's products infringe four patents licensed by the SLA (the "ITC Asserted Patents") and requesting that the ITC institute an ITC investigation. A103-48.  On October 22, 2020, Imperium amended its Complaint to try to cure defects in the complaint, substitute an asserted patent, and accuse additional Samsung products of infringement.  A149-204 (First Amended ITC Complaint ("ITC FAC")).

On October 23, 2020, pursuant to SLA § 2.6, Samsung notified Imperium that its ITC complaint breached the SLA, and demanded that Imperium withdraw that complaint to the extent it implicates SLA-licensed products.  A205-06. Imperium declined.  A207-08.  Samsung responded to explain its positions further. A209-10.  Imperium did not reply.

On November 25, 2020, the ITC instituted Imperium's requested investigation.  *See* 85 Fed. Reg. 77,238-39 (Dec. 1, 2020) (copy submitted at A212-13).  The four asserted patents are directed to features and functionality of image sensors, such as those purchased by Samsung from Sony.  A169-70 (ITC

FAC ¶¶ 45-47).[4]  These patents are licensed under the SLA.  A018-19.  The ITC

FAC accuses certain flagship Samsung products that incorporate Sony image

sensors, such as the Samsung Galaxy S10+ and Galaxy S8, of infringing the ITC

Asserted Patents.  *See* A168-69 (¶ 41).[5]

After receiving the ITC's institution decision, Samsung promptly prepared

this motion.[6]

## IV.   ARGUMENT

### A.   Governing Law and Legal Standard

Injunctions related to ITC proceedings arise "from substantive issues in an

area of law within the unique jurisdiction" of the Federal Circuit, and are subject to

its appellate jurisdiction and governed by its precedent.  *Texas Instruments Inc. v.*

*Tessera, Inc.*, 231 F.3d 1325, 1328 (Fed. Cir. 2000).  A district court can enjoin a

party "from participating in…ITC proceedings" because of a binding forum

selection clause.  *Id.* at 1332.  Such injunctions are appropriate provided they hold

a party to its contractual obligations and do not purport to enjoin the ITC itself.

*See id.*; *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1365-66 (Fed.

---

[4] Imperium brought the ITC FAC under its new name, "Pictos Technologies, Inc."

[5] A complete list of products with Sony image sensors accused of infringement in the ITC FAC appears at A002.

[6] Samsung did not seek this Court's intervention earlier because it was possible the ITC might decline to institute proceedings, rendering this motion moot.  In the near future, Samsung will seek leave to file an amended complaint to incorporate allegations related to Imperium's further breach of the SLA.

Cir. 2011) (enjoining party from participating in ITC proceedings based on forum selection clause).

In *Texas Instruments*, the Federal Circuit held that the standard preliminary injunction test controls whether to enjoin a party from participating in ITC proceedings—i.e., whether there is: (1) a reasonable likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships in movant's favor; and (4) a public interest in favor of the injunction. 231 F.3d at 1329. The Third Circuit standard is substantively identical. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

### B. Samsung Is Likely To Succeed on the Merits

#### 1. The SLA Is a ███████████████ to Imperium's ITC Infringement Allegations Against Samsung Products That Include Sony Image Sensors

Imperium asserts in the ITC that Samsung has infringed the ITC Asserted Patents. A169-70 (¶ 45). As discussed above, Samsung products that incorporate Sony image sensors are licensed to these patents under the SLA. The SLA's express terms give Samsung a ███████████████ to any infringement claims brought by Imperium against those products. A005-06 (§ 2.3).

Samsung is an intended third-party beneficiary under the SLA and may assert its protections. *See Insituform of N. Am. v. Chandler*, 534 A.2d 257, 268-69 (Del. Ch. 1987); *see also Triple C Railcar Serv., Inc. v. City of Wilmington*, 630

A.2d 629, 633 (Del. 1993) (third party "may enforce a contractual promise in [its] own right and name if the contract has been made for [its] benefit"). There can be no real dispute that Sony entered into the SLA in large part for the benefit of Sony customers like Samsung, given the many provisions in the SLA that give Sony customers—third parties to the SLA—rights on which to rely when they incorporate licensed Sony products into their own products.

The SLA acknowledges  precisely because the parties intended for the SLA's benefits to flow to Sony customers. A003, A007 (Recitals 2 & 4, and § 3.1). Imperium, moreover, knew

. A051-52 ( emails); *see* A099, A101 (221:13 – 222:7, 264:6-12) (transcript of 30(b)(6) deponent).

Indeed, if Sony had not ensured that its customers had the right to sell products with Sony image sensors, Sony's own right to sell its image sensors would be meaningless. "[I]t is unlikely that [a manufacturer] would have contracted for the right to manufacture and sell a product knowing that its customers would be unable to use the product that it sold them…." *Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097, 1101 (Fed. Cir. 2004).

Critically, the Samsung products accused in the ITC that include Sony image sensors qualify as "Covered Third Party Products" under the SLA. "Covered Third Party Products" are third party products either (1) "designed and marketed to operate in conjunction with or offered for sale or sold via a Licensed Product" or (2) "that when running, using, operating within, or otherwise benefiting from the functionality of a Licensed Product [are] covered by any claim of the Licensed Patents." A004.

Under the first alternative, Samsung's products that incorporate a Sony image sensor are "designed and marketed to operate in conjunction with…a Licensed Product"—i.e., the Sony image sensor. *See* A226-41 (¶¶ 98-118) (report of Samsung expert Kenneth Parulski).

Under the second alternative, Imperium's own allegations in the ITC establish that the Samsung products it accuses are licensed. The ITC requires that Imperium show investments in a "domestic industry" for the patented technology, which Imperium argues is demonstrated by its licensing of the asserted patents to Sony, who then produces the IMX series of image sensors. A184 (ITC FAC ¶ 110). Imperium asserts that Sony's "IMX series of CMOS imaging sensors" practice the ITC Asserted Patents. *Id*. Notably, Samsung incorporates IMX sensors into the products Imperium accuses of infringement. *Compare* A184 *and* A197-204 (ITC FAC ¶ 110 and Ex. 38) (relying on Sony's IMX series of image

sensors) *with* A002 (identifying accused products with Sony image sensors).
Imperium's own allegations therefore mean that Samsung's products incorporating
IMX sensors are "Covered Third Party Products" because, "when running, using,
operating within, or otherwise benefiting from the functionality of a Licensed
Product[, they are allegedly] covered by [a] claim of the Licensed Patents."

Because the accused Samsung products that incorporate Sony image sensors
are Covered Third Party Products, they are licensed, and Imperium covenanted not
to assert infringement claims against them. Imperium agreed that "Licensee Third
Parties are licensed…to the extent they manufacture…sell…[or] offer for
sale…Covered Third Party Products." A005 (SLA § 2.1). Imperium also
covenanted "not to directly or indirectly, anywhere in the world, assert, make any
claim, commence, or prosecute any lawsuit, action, or proceeding for infringement
against any entity for infringement of the Licensed Patents with respect to
Licensed Products or Covered Third Party Products." A006 (SLA § 2.6). Third-
party beneficiary Samsung, therefore, has the right under SLA § 2.3 (A005-06) to
plead the SLA ███████████████████████████
████  Imperium's ITC complaint.

### 2.  Samsung Is Likely to Prevail on a Claim for Breach of Contract Against Imperium for Again Violating the SLA

The SLA is not just a defense against Imperium's new infringement claims;
it is also the basis for a claim for breach of contract. Samsung is likely to succeed

in showing that Imperium breached the SLA by filing its infringement claims at the ITC.  The elements of breach of contract under Delaware law (which applies per SLA § 6.5 (A012)) are: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  For essentially the same reasons discussed above in Section IV.B.1, Imperium breached the SLA, including the covenant-not-to-assert (A006 (§ 2.6)), by claiming infringement at the ITC by Samsung products that incorporate Sony image sensors.  Thus, Samsung is likely to succeed on a claim for breach of contract.

### 3.    This Court Is the Exclusive Forum for *All* Disputes Concerning the SLA, Including Imperium's ITC Infringement Claims

Because Imperium alleges infringement by Samsung products licensed under the SLA, those claims are subject to this Court's exclusive jurisdiction and cannot be brought in the ITC.  Under the FSC's plain language, "*all disputes and litigation* regarding [the SLA], its construction and *matters connected with [the SLA's] performance* [are] subject to the exclusive jurisdiction of" this Court.  A012 (§ 6.5).    Imperium  likewise  agreed  to  "submit *any  disputes,  matters  of interpretation, controversies, or enforcement actions* arising with respect to the subject matter of [the SLA] *exclusively to*" this Court.  *Id*.

16

Imperium's assertion of licensed patents and Samsung's invocation of the SLA as a defense, whether viewed as "disputes," "litigation," "controversies," or "enforcement actions" easily fall within the FSC's broad terms. *See, e.g.*, *Texas Instruments*, 231 F.3d at 1330-31 ("section 337 proceedings at the ITC are recognized as litigation"). In two cases with facts that closely parallel the present circumstances, the Federal Circuit held that analogous forum selection clauses in licenses covered claims of patent infringement improperly brought in the ITC.[7]

In *Texas Instruments*, the Federal Circuit vacated the denial of a preliminary injunction against a party's continued participation in ITC proceedings, holding that a license's forum selection clause "require[d] any litigation, including ITC proceedings…to occur in the State of California." 231 F.3d at 1326; *see also id.* at 1332 (party "breached…the license agreement by bringing an action…at the ITC" rather than in bargained-for forum).

The license agreement in *Texas Instruments* provided that disputes that "arise from, under, out of or in connection with the Agreement" shall be brought in California. 221 F.3d at 1327. The Federal Circuit held that this provision extended to patent infringement disputes, observing: "[P]atent infringement

---

[7] Other courts have reached the same conclusion when presented with similar facts. *See*, *e.g.*, *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. C-05-4063-CW, 2007 WL 3232441, at *4-6 (N.D. Cal. Nov. 1, 2007); *Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1662-B, 2006 WL 8455598, at *5-6 (S.D. Cal. Feb. 13, 2006); *Ciena Corp v. Nortel Networks Inc.*, No 2:05-CV-14, 2005 WL 1189881, at *3-7 (E.D. Tex. May 19, 2005).

disputes do arise from license agreements.  There may be an issue, as here, of whether certain goods are covered by the licensed patents….Thus, the governing law clause in the present case, as in any patent license agreement, necessarily covers disputes concerning patent issues." *Id*. at 1331 (citations omitted).  The Court found that, because patent infringement claims "arise" under the agreement, they must be brought in the specified jurisdiction.  Here, Imperium's infringement claims relating to products with Sony sensors "aris[e] with respect to the subject matter of" the SLA and must be brought in Delaware.

Similarly, in *General Protecht*, the Federal Circuit applied *Texas Instruments* to affirm a preliminary injunction that enjoined a patentee from proceeding with an infringement action in the ITC in view of a forum selection clause in a settlement agreement.  651 F.3d at 1363-66.  That clause provided that "[a]ny dispute between the Parties relating to or arising out of this [Agreement] shall be prosecuted exclusively in the United States District Court for the District of New Mexico." *Id*. at 1358.  Imperium likewise agreed to this Court's exclusive jurisdiction in the FSC for claims arising with respect to the subject matter of the SLA and, accordingly, its ITC claims should have been brought here.

## C.   Absent a Preliminary Injunction, Samsung Will Suffer Irreparable Harm

Samsung will be irreparably harmed if the Court does not issue a preliminary injunction barring Imperium's efforts to litigate infringement claims

outside of this Court's exclusive jurisdiction.  As in *General Protecht*, which affirmed a finding of irreparable harm, Samsung will incur "expenses involved in defending the ITC proceeding," in a forum that Imperium "had already bargained away," and the FSC "would be reduced to a nullity."  651 F.3d at 1363-65.

It is well established in Federal Circuit precedent that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  Samsung would face precisely those forms of irreparable injury without an injunction.  That is especially true because the remedy at the ITC is total exclusion of the accused licensed products from the U.S. market.  *See* 19 U.S.C. § 1337(d)-(e).  "There is a high likelihood that even a temporary ban on imports would disrupt" Samsung's business and "damage relations with [its] customers," and those "harms cannot readily be quantified, and thus are irreparable."  *Tessera*, 2007 WL 3232441, at *6.  Additionally, if Imperium succeeds at the ITC, it will not be required to post a bond as a requirement for the ITC to issue an exclusion order.  Thus, if the exclusion order is wrongly issued by the ITC, Imperium will be unable to compensate Samsung for any damages.

The risk of significant irreversible harm is further heightened because Imperium has accused flagship Samsung mobile and tablet products.  A168-69

(ITC FAC ¶ 41). A majority of those products incorporate Sony sensors, A002, and they are important to Samsung's business. Indeed, over the last 5 years, Samsung has averaged around 30% of U.S. smartphone sales. A243. The smart phone market is highly competitive, and the top players (like Samsung) must constantly try to stay ahead of the competition and maintain brand loyalty. A244-48. An exclusion of Samsung phones (including flagship models) under these circumstances would jeopardize Samsung's brand loyalty and cause grave damage to Samsung's business and marketplace goodwill. Ground lost to other mobile phone makers would be difficult to recover and impossible to quantify, which is precisely the form of irreparable harm that justifies an injunction. *See Celsis*, 664 F.3d at 930; *Tessera*, 2007 WL 3232441, at *6.

### D.     The Balance of Hardships Favors Samsung

Imperium will suffer no prejudice or hardship from being held to its promises. Imperium is a non-practicing entity, sells no products, and does not compete with Samsung (or anyone else). And an injunction will simply enforce the status quo, *see Kos Pharms.*, 369 F.3d at 708, by requiring Imperium to comply with its own commitment to litigate issues arising under the SLA in the "exclusive forum" that agreement designates. The Federal Circuit held in *General Protecht* that this consideration favored an injunction: "Having contracted for a specific forum, Leviton should not be heard to argue that the enforcement of the contract

into which it freely entered would cause hardship." 651 F.3d at 1365. So too here. Imperium freely entered into the SLA, which requires it to litigate patent infringement claims in this Court, not the ITC.

Moreover, no exigent circumstance or urgency weighs in favor of permitting Imperium to pursue its claims at the ITC. The ITC proceeding is still in its early stages, and any delay that might result from requiring Imperium to pursue its claims in this Court pales in comparison with Imperium's own substantial delay in bringing the ITC case, which includes claims that Imperium reasonably could have brought at the same time as the Texas action.

### E.     The Public Interest Favors an Injunction

The public interest favors bringing any litigation to the "exclusive jurisdiction" required by the SLA. The Supreme Court has repeatedly affirmed that "[t]he enforcement of valid forum-selection clauses…furthers vital interests of the justice system." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. of the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (cleaned up). The Federal Circuit reached a similar conclusion in *General Protecht*, holding "[t]here is no public interest served by excusing a party's violation of its previously negotiated contractual undertaking to litigate in a particular forum." 651 F.3d at 1366. Additionally, Imperium's ITC allegations suggest that it is forum shopping, launching a de facto collateral attack on the Federal Circuit's 2019 ruling. *See* A165 (¶ 28) (describing ITC FAC as

based "on nearly the same patents" as its earlier case).   The public interest disfavors forum shopping.  *E.g.*, *Hanna v. Plumer*, 380 U.S. 460, 467-68 (1965).[8]

Imperium agreed in the SLA to have this Court address any issues relating to the SLA.  It is contrary to the public interest to permit Imperium to ignore its contractual obligations to use the resources of a government agency (like the ITC) to decide patent infringement claims and license applicability that Imperium agreed should be decided by this Court.

## CONCLUSION

Samsung respectfully requests that the Court grant its Motion for a Preliminary Injunction and that the Court order a minimal bond.  *See* Fed. R. Civ. P. 65(c); *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003).

---

[8] Imperium's Third Motion to Transfer, asking the Court to transfer this case to Texas even though the dispute was last active there years ago, raises the same concerns. *See* D.I. 107 at 19-20.

/s/ John W. Shaw
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP

OF COUNSEL:                              I.M. Pei Building
Jesse J. Jenner                          1105 North Market Street, 12th Floor
Steven Pepe                              Wilmington, DE 19801
Kevin J. Post                            (302) 298-0700
Alexander E. Middleton                   jshaw@shawkeller.com
ROPES & GRAY LLP                         arussell@shawkeller.com
1211 Avenue of the Americas              *Attorneys for Plaintiff Samsung*
New York, NY 10036                       *Electronics Co., Ltd.*
(212) 596-9000

Samuel L. Brenner
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
(202) 508-4600

Dated:  December 22, 2020

## CERTIFICATION OF COMPLIANCE

I hereby certify that this brief complies with the word count limitations of this Court's standing scheduling order because this brief contains 4,999 words. This brief complies with the type and font limitations of this Court's standing scheduling order because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

OF COUNSEL:
Jesse J. Jenner
Steven Pepe
Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Samuel L. Brenner
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
(202) 508-4600

Dated: December 22, 2020

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff Samsung Electronics Co., Ltd.*

## **CERTIFICATE OF SERVICE**

I, John W. Shaw, hereby certify that on December 22, 2020, this document

was served on the person listed below in the manner indicated:

**BY EMAIL**

Joelle E. Polesky
STRADLEY RONON
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 295-3805
jpolesky@stradley.com

Gregory L. Ewing
POTOMAC LAW GROUP, PLLC
1300 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 204-3005
gewing@potomaclaw.com

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff Samsung*
*Electronics Co., Ltd.*