# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD.,

               Plaintiff,

v.

IMPERIUM IP HOLDINGS (CAYMAN), LTD.,

               Defendant.

Civil Action 15-1059-CFC



PUBLIC VERSION - REDACTED

## DEFENDANT IMPERIUM IP HOLDINGS (CAYMAN), LTD.'S OPPOSITION TO PLAINTIFF'S PRELIMINARY INJUNCTION MOTION

Joelle E. Polesky (ID No. 3694)
Stradley Ronon Stevens & Young, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Tel: 302 295-4856
Email: jpolesky@stradley.com

*Attorneys for Defendant, Imperium IP Holdings (Cayman), Ltd.*

OF COUNSEL:
Gregory L. Ewing (admitted *pro hac vice*)
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202 204-3005
Email: gewing@potomaclaw.com

Dated: January 8, 2021

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

NATURE AND STAGE OF PROCEEDINGS .................................. 1

STATEMENT OF RELEVANT FACTS ........................................... 3

I.     Imperium's 2011 action against Sony ........................................ 3

II.    Imperium's 2014 action against Samsung.................................. 4

III.   Pictos files for an investigation before the International Trade
Commission ............................................................................... 6

ARGUMENT ................................................................................... 7

I.     Legal Standard .......................................................................... 7

II.    Samsung cannot satisfy the requirements for issuance of a preliminary
injunction. ................................................................................. 7

    A.   There is no reasonable likelihood of Samsung's success..........................7

        1.   Imperium has explicitly excluded licensed products from its
ITC exclusion request.............................................................8

        2.   Only the use of Sony image sensors are licensed; Samsung and
other third-party image sensors used by Samsung are explicitly
excluded from the SLA .........................................................9

        3.   Samsung's argument would grant it a sub-license for its
infringing sensors, which is disallowed under the SLA.....................14

        4.   Samsung's products are not Covered Third Party Products. ..............15

            a)   Samsung image sensors are not "designed *and* marketed"
to operate with a Sony image sensor. ...................................16

            b)   Samsung does not admit that its products are "covered by
any claim of the Licensed Patents" and are therefore not
Covered Third Party Products.................................................19

        5.   Samsung's interpretation of the SLA contradicts other parties'
contemporaneous interpretations. ........................................19

    B.   Samsung does not face irreparable harm.................................20

    C.   The balance of hardships weighs in favor of Imperium and against
Samsung...................................................................................21

    D.   Public Interest favors Imperium. ..............................................22

    CONCLUSION .......................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49 (2013) ...................................................................23

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951 (Fed. Cir. 1990)…………………………………………………....7

*Granite Constr. Co. v. United States*, 962 F.2d 998 (Fed. Cir. 1992) ....................13

*In re G-I Holdings, Inc.*, 755 F.3d 195 (3d Cir. 2014) ...........................................14

*Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008) ......................21

*Kos. Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) .............................7

*Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393 (Del. 2010) .........13

*Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153 (Del. 2010)..................................13

*Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994) ...........................9

*Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325 (Fed. Cir. 2000) .............7, 9

## NATURE AND STAGE OF PROCEEDINGS

After deciding for the first seventeen months of litigation in Texas not to raise its so-called Sony License Defense and thereafter being displeased with the Eastern District of Texas' rulings on that defense, Samsung filed the instant action in November 2015.  After Samsung prevailed in the Eastern District, it resurrected this case to try again to enforce a contract to which it was not a party and the benefits from which it was explicitly excluded.  In September 2020, Pictos, as Imperium is now known, filed a request with the International Trade Commission asking the Commission to exclude from import into the U.S. all Samsung imaging sensors and unlicensed products containing those sensors that infringed Pictos's patents and benefitted from trade secrets misappropriated by Samsung.  The ITC has scheduled a *Markman* hearing for April 26, 2021, and a hearing on the merits for August 16-23, 2021.  Samsung now moves to enjoin Imperium from pursuing the ITC action.

## SUMMARY OF ARGUMENT

1.     Samsung cannot satisfy the four requirements for issuance of a preliminary injunction and its request should therefore be denied.

2.     There is no likelihood Samsung will succeed because Pictos unambiguously excluded licensed products (i.e., Sony imaging sensors) from its ITC Complaint, Imperium and Sony explicitly excluded Samsung from the benefits of the SLA, Samsung's products are not Covered Third Party Products, and Samsung's interpretation of the SLA is contrary to its plain language.

3.     Samsung does not face irreparable harm because the expenses it alleges do not qualify as irreparable harm as a matter of law.  Moreover, the harm Samsung claims would only occur unjustly if the ITC wrongly decides the issues before it, an assumption which should not be the basis for an irreparable harm finding.

4.     The other preliminary injunction factors weigh against Samsung and in favor of denying its requested preliminary injunction.

## STATEMENT OF RELEVANT FACTS

### I.    Imperium's 2011 action against Sony

In 2011, Imperium sued Sony, Apple, LG, Motorola, and three other large Samsung competitors for infringing five patents.[1]   That litigation concluded two years later, when the defendants each signed confidential settlement-and-license agreements with Imperium.[2]   At the time of settlement, many of the co-defendants used Sony image sensors, including Apple, LG, and Motorola Mobility.   Because Imperium and the settling parties desired to settle all of the claims against them separately, Imperium and each settling party agreed to exclude from the benefits of their particular settlement certain other parties.   The list of excluded parties included the other named defendants and certain third parties.   Without these explicit exclusions, settlement with Sony would have negated or minimized the value of settlement with many of the other defendants, including Apple, LG, and Motorola/Google, because those parties were using almost exclusively Sony image sensors – and many still do.

While settling with Apple, Sony, Motorola and others, Imperium anticipated bringing infringement claims against Samsung and therefore explicitly excluded

---

[1]    *See* D.I. 63 at ¶ 2; E.D. Tex. Case 4:11-cv-163 ("Sony action"), D.I. 1 (asserting, *inter alia*, Imperium's U.S. Patent No. 6,271,884).

[2]    *See, e.g.*, Sony action D.I. 512, 517, 522, 527, 531, 535, 536.

3

Samsung's products as licensed products ████████████████████████,
including in the Sony-Imperium license agreement ("SLA").[3]

## II.   Imperium's 2014 action against Samsung

Imperium commenced its Texas action against Samsung in June 2014, less than a year after finally settling all claims against Apple, Sony, et. al., alleging infringement of three patents.[4]

Samsung's interrogatory responses indicated that some of the accused products contained Sony-manufactured image sensors.[5]  This was consistent with Imperium's obligations under the SLA, since these Sony components were superfluous to Imperium's infringement claims.[6]

After Imperium received consent from Sony, it produced a copy of the SLA to Samsung on April 2, 2015, and ████████████████████████████

---

[3]      D.I. 10-1 (copy of SLA) at 3–4 (§§ 2.1, 2.2, 2.6); *see also id*. at 2 (defining "Covered Third Party Products"); D.I. 63 at ¶¶ 3–4.

[4]      D.I. 63 at ¶ 5; Texas action D.I. 1.

[5]      Texas action D.I. 169-16 (identifying image sensors in accused products).

[6]      Such products invariably include third-party components, and Samsung's were no exception. *See*, *e.g.*, *id*. (identifying sensors from Panasonic, Texas Instruments, and ~10 other companies). But Imperium did not rely on Sony sensors to satisfy any element of the asserted patent claims, since some accused products had multiple cameras, and each phone, tablet or laptop contained at least one non-Sony sensor.  The asserted '029 patent claims also did not require an image sensor.

███████████████████████████████████

████████ [7]

The Texas court's fact discovery and summary judgment deadline—September 9, 2015—passed without Samsung alleging a license defense premised on the SLA or any other Imperium license agreement.[8]  Instead, on November 3, 2015, Samsung first raised the SLA in the Texas action via a request to file an "out-of-time" summary-judgment motion.[9]  That was two months after the deadline, seven months after receiving the SLA from Imperium, and almost seventeen months after receiving the complaint.  What is more, discovery showed that Samsung had been tracking the Sony action, and had known of Sony settling "to Imperium's satisfaction," long before then.[10]

---

[7]    D.I. 37 (Samsung response to previous motion to dismiss) at 3.

[8]    Samsung's answer alleged "[o]n information and belief" a placeholder defense based on "a covenant not to sue, an express and/or implied license, and/or [patent] exhaustion." Texas action D.I. 29 at ¶ 63. In responding to Imperium's interrogatories, Samsung said its investigation was ongoing, and did not provide any further information until July 2015—when it specified an unrelated license theory based on an industry standards body. Texas action D.I. 169-2 at 38–39.

[9]    Texas action D.I. 155; *see also* D.I. 63 at ¶¶ 9–11.

[10]    Just weeks after Imperium's filing of the Sony action, Samsung hired a patent broker to try to purchase Imperium's patents anonymously. *See* Fed. Cir. Case 18-1923, D.I. 31 at 9. Samsung then continued to track that litigation through the end of 2013. *See id.* at 22. In one October 31, 2013 email, Samsung's broker informed a Samsung in-house attorney that the Sony action had concluded and Sony had "settled to Imperium's satisfaction." *See id.* at 21.

### III.   Pictos files for an investigation before the International Trade Commission

On September 25, 2020, Pictos, as Imperium is now known, filed a Complaint before the International Trade Commission (the "ITC") requesting that the ITC institute an investigation as to Samsung's unfair trade practices, i.e., its misappropriation of Pictos' trade secrets and its infringement of Pictos' patents. Fully aware of its commitments in various licenses, Pictos explicitly excluded validly licensed products from its request for an exclusion order:

> Licensees for all of the Asserted Patents are included in Confidential Exhibit 1. Upon information and belief, Respondents may use digital imaging chips manufactured by one of more of Complainant's licensees. Complainant does not seek exclusion of any of Respondents' products using digital imaging devices licensed pursuant to a valid licensing agreement, but only for unlicensed digital imaging devices.[11]

---

[11]   First Amended ITC Complaint ¶ 47.  (D.I 125, A149-204).  For the Court's convenience and to avoid duplicative filings, Imperium refers to Samsung's exhibits and appendix to its motion for a preliminary injunction wherever possible.

# ARGUMENT

## I. Legal Standard

A party seeking an injunction must show: (1) a reasonable likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships in its favor; and (4) a public interest in favor of the injunction. *See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952 (Fed. Cir. 1990); *Kos. Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000). Samsung cannot meet these threshold requirements.

## II. Samsung cannot satisfy the requirements for issuance of a preliminary injunction.

### A. There is no reasonable likelihood of Samsung's success.

No reasonable world exists where Samsung has a likelihood of success. First, Pictos has explicitly excluded licensed products from its request to the ITC. Therefore, because Pictos did not request an exclusion based on Sony's products licensed under the SLA, Samsung has no likelihood of succeeding based on the SLA. Second, Samsung is not a third-party beneficiary of the SLA. Third, Samsung's products are not Covered Third-Party Products such that Samsung enjoys no benefits under the SLA for the products at issue. Fourth, Samsung's attempted reliance on parole evidence is unavailing and foreclosed by the SLA's integration clause. Fifth,

7

Samsung's interpretation of the SLA would require rewriting the SLA to allow for sub-licensing, a right specifically not granted in the SLA.

> **1.    Imperium has explicitly excluded licensed products from its ITC exclusion request.**

Samsung has no chance of success at the ITC based on the SLA because Pictos explicitly excluded licensed products from its requested ITC relief.  For Samsung to have any likelihood of success for purposes of its preliminary injunction motion, it must have a likelihood of success on the SLA before the ITC.  Because Pictos has explicitly excluded validly licensed products – i.e., products covered by the SLA – from its requested relief before the ITC, there is zero chance of success for Samsung based on its SLA defense before the ITC.

Pictos is aware of and continues to honor its license agreements, including the SLA.  In its Complaint, Pictos made very clear it was not seeking exclusion of the products of its licensees.  As confidential exhibits to its Complaint, Pictos provided the ITC a complete list of its licensees and their associated license agreements. Pictos went on to leave no question it both recognized that Samsung might use licensed sensors and that Pictos did not seek exclusion based on any licensed sensor.

> Licensees for all of the Asserted Patents are included in Confidential Exhibit 1. Upon information and belief, Respondents may use digital imaging chips manufactured by one of more of Complainant's licensees. Complainant does not seek exclusion of any of Respondents' products using digital imaging devices licensed

pursuant to a valid licensing agreement, but only for unlicensed digital imaging devices.[12]

As a result, the only way Samsung succeeds on its SLA defense before the ITC is if the presiding judge and the Commission ignore Pictos's well-tailored requested relief. Samsung's likelihood of success is therefore entirely dependent on assuming that the presiding judge and the ITC will make an incorrect decision. This assumption is not a valid basis for finding a likelihood of success. The Court should deny Samsung's motion on this ground alone.[13]

### 2. Only the use of Sony image sensors are licensed; Samsung and other third-party image sensors used by Samsung are explicitly excluded from the SLA

Samsung and other third-party image sensors are explicitly excluded from benefitting from the SLA and therefore Samsung has no likelihood of success on the merits.

The plain language of the SLA is unambiguous, the "Licensed Products" are limited to Sony products, in this case Sony image sensors.

> "'Licensed Products' means any past, present, and future products, product lines, services, devices, systems, components, network, hardware, software, method, process, functionality, feature,

---

[12]   First Amended ITC Complaint ¶ 47. A149-204.

[13]   "[B]ecause 'a movant must establish both a likelihood of success on the merits and irreparable harm ... the district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors.'" *Texas Instruments Inc.*, 231 F.3d at 1329 (quoting *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994)).

> technology, instruction, or other instrumentality or any combination
> of the foregoing, and other offerings of Licensee.[14]

Any other image sensors used in Samsung products are not licensed. As the

definition of "Licensed Products" also makes abundantly clear, Sony does not have

the right to sub-license or otherwise grant a license to Samsung's non-licensed image

sensors, even if those image sensors are in the same device.

> For avoidance of doubt, the inclusion of the term "licensed" in this
> definition does not convey the right to Licensee or its Affiliates to
> sub-license the Licensed Patents (except as otherwise provided
> herein).[15]

Third party rights only extend to the provision of goods and the exploitation

of goods (image sensors) provided by Sony, and expressly do not extend to the

provision of goods to or the exploitation of goods by third parties, *e.g.*, Samsung.

> Excluded Parties . . . by way of example and not of limitation, an
> Entity which is a purchaser or end-user of a Sony imaging sensor is
> not an Excluded Party *with respect to that Sony imaging sensor* . . . .
> (emphasis added).[16]

When Imperium entered into its settlement and license with Sony, it knew full

well it intended to continue its licensing efforts against other parties.  As Samsung

admits, "Imperium . . .  knew before executing the SLA that Samsung purchased

---

[14]     SLA § 1 "Licensed Products" (A004).

[15]     *Id*.

[16]     SLA § 2.8, Excluded Parties (A006 - A007).

image sensors from Sony."[17]  Knowing full well it intended to continue to pursue a

licensing agreement with Samsung, Imperium protected its right to do so.

> For avoidance of doubt, nothing herein shall be construed to convey
> any license, release or other right (other than for the provision of
> goods directly or indirectly to, and the exploitation of goods provided
> directly or indirectly by, Licensee and its Affiliates) to . . . (ii) the
> persons listed on Schedule 2.5 hereto.[18]

In reliance on this provision, Imperium included Samsung on Schedule 2.5,

along with 16 other parties with whom it had engaged or intended to engage in

licensing discussions.[19]  Therefore, based on the plain terms of the SLA, Samsung

has no chance of success because it is an Excluded Party for whom nothing in the

SLA "shall be construed to convey any license, release or other right."

Samsung's attempt to avoid the import of its inclusion on the Excluded Parties

list fails by the plain meaning of the language on which it relies.  Samsung quotes

the final sentence of Section 2.8 to counter its explicit exclusion, but even

momentary analysis shows that Samsung is incorrect.  The last sentence states in

full:

> Excluded Party shall not, however, include any Licensee Third
> Parties with respect to Licensed Products or Covered Third Party
> Products (regardless of whether or not they are included in
> subsections (i) - (iii) of this Section 2.8) (by way of example and not
> of limitation, an Entity which is a purchaser or end-user of a Sony

---

[17]   Motion in Support of Preliminary Injunction (DI. 124 at 13).

[18]   SLA § 2.8, A006-A007.

[19]   SLA, Schedule 2.5, A022.

imaging sensor is not an Excluded Party with respect to *that* Sony imaging sensor).[20]

The example included by Sony and Imperium is illustrative of the situation here. "[A]n Entity [Samsung] which is a purchaser or end-user of a Sony imaging sensor is not an Excluded Party with respect to *that* Sony imaging sensor."[21]  Sony and Imperium recognized by their agreement that an entity like Samsung might include a licensed Sony imaging sensor as well as an unlicensed Samsung sensor in its products.  To address this situation, Sony and Imperium agreed that such an entity would benefit from the SLA for "*that* Sony imaging sensor" but that the license would not extend to Samsung's imaging sensor.

Indeed, Samsung's interpretation of Covered Third Party Products and the Excluded Parties clauses would make the Excluded Parties clause superfluous.  If Samsung were not using a Sony imaging sensor, the SLA would be inapplicable and there would be no need to exclude Samsung.  The only reason then to list Samsung as an Excluded Party is therefore because Samsung might use Sony imaging sensors and the Parties to the SLA intended to exclude it.  If, as Samsung argues, any time Samsung includes a Sony sensor in its devices those devices are Covered Third Party Products and beneficiaries of the SLA, the Excluded Parties clause is drained of all meaning.  In Samsung's worldview therefore, the Excluded Parties clause has no

---

[20]    SLA § 2.8, A006-A007 (emphasis added).

[21]    *Id.*

12

relevance if Samsung does not use a Sony imaging sensor and is meaningless if Samsung does use a Sony imaging sensor. Samsung's argument thereby "render[s] a provision or term"—i.e., the Excluded Parties clause—"meaningless or illusory," which would violate the rule of contract interpretation that the Court must "give each provision and term effect, so as not to render any part of the contract mere surplusage." *In re G-I Holdings, Inc.*, 755 F.3d 195, 203–04 (3d Cir. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)); *see also Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010)); *Granite Constr. Co. v. United States*, 962 F.2d 998, 1003 (Fed. Cir. 1992) ("When possible, a contract must be interpreted as a whole in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.").

As above, because Samsung is an explicitly excluded party and its arguments nullify an entire provision of the SLA, the SLA is not applicable to the ITC proceedings and Samsung has no likelihood of success.[22] Samsung's requested preliminary injunction must be denied.

---

[22]  Imperium has extensively briefed its arguments as to why Samsung is not a third-party beneficiary to the SLA in its Motion to Transfer and incorporates those arguments. (DI 100 and 110).

### 3.    Samsung's argument would grant it a sub-license for its infringing sensors, which is disallowed under the SLA.

Samsung's argument in support of its SLA defense is that if a phone, laptop, tablet, or any other device has at least one licensed Sony image sensor, any unlicensed Samsung image sensor in that device is not infringing and therefore is sub-licensed.  The SLA though does not grant Sony the right to grant a sub-license or implied license.

In the SLA, Imperium made clear the extent of the license granted:  "Licensor hereby grants to Licensee a fully paid-up, non-exclusive, ***non-sub licensable*** . . . , nontransferable . . . , perpetual, worldwide, irrevocable license under the Licensed Patents. . . "[23]  Similarly, in the definition of "Licensed Products," the SLA states: "For avoidance of doubt, the inclusion of the term 'licensed' in this definition does not convey the right to Licensee or its Affiliates to sub-license the Licensed Patents."[24]

The plain language of the SLA is unambiguous, Sony does not have the right to sub-license or otherwise grant a license to Samsung's non-licensed image sensors, even if those image sensors are in the same device.  The exception to the Excluded

---

[23]    SLA § 2.1 "License" (A005) (emphasis added).  Section 5 of the SLA is ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Samsung does not argue that Sony has assigned its rights under the SLA to Samsung.

[24]    SLA § 1 "Licensed Products" (A004).

14

Parties clause supports the same conclusion.  Recognizing that a Sony sensor in a device did not convey a license to any other sensor in that third-party product, the parties made clear that the SLA applied only "with respect to that Sony imaging sensor," not to the other sensors.[25]

Nothing in the SLA grants Sony the right to extend Imperium's license grant to Sony to any other party, and especially not excluded parties like Samsung.

### 4.   Samsung's products are not Covered Third Party Products.

Samsung and its expert argue that Samsung's products at issue in the ITC investigation are "Covered Third Party Products" but both Samsung and its expert ignore the provisions discussed above that make clear that only Sony image sensors are licensed.[26]   According to the SLA, to be a Covered Third Party Product, Samsung's products must either be "(i) . . . designed and marketed to operate in conjunction with or offered for sale or sold via a Licensed Product;" or they must be "(ii) . . .  products or services that when running, using, operating within, or otherwise benefitting from the functionality of a Licensed Product is covered by any claim of the Licensed Patents."[27]   Samsung satisfies neither.

---

[25]    SLA § 2.8 "Excluded Parties" (A006 – A007).

[26]    Opening Brief in Support of Motion for Preliminary Injunction ("Op. Br.") (DI 124 at 14).

[27]    SLA § 1 "Covered Third Party Products" (A004).

15

### a) Samsung image sensors are not "designed *and* marketed" to operate with a Sony image sensor.

Samsung first argues that Samsung's products – e.g., its "flagship" phones – are "designed and marketed to operate in conjunction with a Licensed Product – i.e., the Sony image sensor."[28]  This is a conjunctive test such that products must be "designed *and* marketed" to operate with a Sony imaging sensor.  In support Samsung points to the expert report of Kenneth Parulski.[29]  Not only has Mr. Parulski not been, and is unlikely to be, qualified as an expert on marketing – he has no such qualifications – but the support in his report makes little sense.

Mr. Parulski's argument boils down to the fact that Samsung markets its products as having cameras with common resolutions and generic technical terms. Three examples suffice to show Samsung is very unlikely to succeed.  First, Mr. Parulski argues that because Samsung markets the Samsung Galaxy S9 as having a 12 megapixel camera, it is marketing it as having a Sony image sensor because the Sony sensor has 12 megapixels.[30]  But the fact that a camera is marketed as having 12 megapixels – a very common and standard resolution – does not indicate that it

---

[28]    Op. Br. at 14.

[29]    Parulski Report ¶ 106 (A234 – A235).

[30]    Parulski Report ¶ 107 (A234).

is a Sony camera.  Indeed, Samsung's own website lists at least eight of its own sensors that have 12 megapixels:[31]

| | Part Number ▾ | Resolution ▾ | Pixel Size ▾ | Optical Format ▾ | Pixel Type ▾ | Interface ▾ | Chroma ▾ | Auto Focus ▾ |
|---|---|---|---|---|---|---|---|---|
| ☐ | S5K2L5 | 4032x3016 (12M) | 1.25um | 1/2.8" | ISOCELL Plus | MIPI 4 Lane RAW | RGB | Super-PD |
| ☐ | S5K2L7 | 4032x3024 (12M) | 1.4um | 1/2.6" | ISOCELL | MIPI 4 Lane RAW | RGB | Dual-PD |
| ☐ | S5K2L8 | 4032x3024 (12M) | 1.28um | 1/2.8" | ISOCELL | MIPI 4 Lane RAW | RGB | Dual-PD |
| ☐ | S5K2LA | 4032x3024 (12M) | 1.4um | 1/2.55" | ISOCELL Plus | MIPI 4 Lane RAW | RGB | Dual-PD |
| ☐ | S5K2LD | 4032x3024 (12M) | 1.8um | 1/1.76" | ISOCELL Plus | MIPI 4 Lane RAW | RGB | Dual-PD |
| ☐ | S5K2LQ | 4032x3024 (12M) | 1.28um | 1/2.8" | ISOCELL Plus | MIPI 4 Lane RAW | RGB | Dual-PD |
| ☐ | S5KGM1 | 4000x3000 (48M (12M Output)) | 0.8um | 1/2" | ISOCELL Plus | MIPI 4 Lane RAW | Tetracell | PDAF |
| ☐ | SAK2L3 | 4032x3024 (12M) | 1.4um | 1/2.6" | ISOCELL | MIPI 4 Lane RAW | RGB | Dual-PD |

Marketing based on 12 megapixels is therefore just as likely, if not more likely from a consumer perspective for a Samsung phone, to indicate a Samsung image sensor.

As a second example, Mr. Parulski claims that using the marketing term "Super Speed Dual Pixel" refers to a Sony sensor because Sony calls this "'Dual PD' (dual photo diode) technology."[32]  But Samsung also refers to this technology as "Dual PD" technology, as can be seen in the right-most column from Samsung's website above.[33]

---

[31]    *See* Mobile Image Sensor | Samsung Semiconductor Global Website, available at https://www.samsung.com/semiconductor/image-sensor/mobile-image-sensor/ (last visited Jan. 7, 2021).

[32]    Parulski Report ¶ 108 (A235 – A236).

[33]    *See* Mobile Image Sensor | Samsung Semiconductor Global Website, available at https://www.samsung.com/semiconductor/image-sensor/mobile-image-sensor/ (last visited Jan. 7, 2021).

Finally, Mr. Parulski lists at least 10 phones and tablets that can use a Sony or Samsung image sensor interchangeably.[34]  None of these devices are marketed as the "Samsung Galaxy S6 with a Sony camera" versus the "Samsung Galaxy S6 with a Samsung camera."  Indeed, Samsung and Sony are allegedly fierce competitors.[35]  If Samsung actually marketed its products based on their inclusion of Sony image sensors, it would cause itself the exact brand loyalty harm it claims in its preliminary injunction motion.[36]

Although Imperium has not yet had an opportunity to depose or cross-examine Mr. Parulski, the facial inadequacy of Mr. Paulski's "expert" report on marketing cannot be the basis for a finding that Samsung's devices are "marketed" for purposes of the definition of Covered Third Party Products.

---

[34]     Parulski Report ¶¶ 90-91.

[35]     Research firm claims Sony had nearly half of the image sensor market share in 2019 (Feb. 17, 2020), A042 ("Samsung remains the biggest competitor to Sony's image sensor business.").

[36]     *See* Op. Br. at 20 ("The smart phone market is highly competitive, and the top players (like Samsung) must constantly try to stay ahead of the competition and maintain brand loyalty. A244-48.").  The harm that would be caused by Samsung advertising based on inclusion of its primary competitor – "[g]round lost to other mobile phone makers would be difficult to recover and impossible to quantify," *id*. – is routinely self-inflicted if Samsung's expert is to be believed.

### b)   Samsung does not admit that its products are "covered by any claim of the Licensed Patents" and are therefore not Covered Third Party Products.

Samsung also *almost* argues that its products fall under the second prong of the "Covered Third Party Products" test:  "(ii) . . .  products or services that when running, using, operating within, or otherwise benefitting from the functionality of a Licensed Product **is covered** by any claim of the Licensed Patents."[37]  But instead of arguing based on the actual contract language, which requires that the third-party products be covered "by any claim of the Licensed Patents," Samsung argues that its products are "allegedly" covered by a claim of the Licensed Patents.[38] "Allegedly" being covered by a claim of the Licensed Patents is not the contractual language and is not the same as admitting that its products are covered.

### 5.   Samsung's interpretation of the SLA contradicts other parties' contemporaneous interpretations.

Furthermore, Samsung's interpretation of the SLA is in direct conflict with the interpretation of the SLA by other contemporaneous parties.  At least four other parties settled with Imperium after the SLA.  Motorola Mobility, one of Sony's co-defendants who had been purchased by Google, settled almost two months after Sony and was actively using Sony sensors in its Pixel Chromebook when it settled.[39]

---

[37]   Op. Br. at 14-15; SLA § 1 "Covered Third Party Products" (A004) (emphasis added).

[38]   Op. Br. at 14-15.

[39]   Sony action D.I. 536.

LG, another co-defendant, who used Sony sensors in its G2 and G3 series of mobile phones, settled almost a month after Sony.[40]  Similarly, Samsung Techwin, one of Samsung's subsidiaries and co-defendants, settled with Imperium in 2015 during the pendency of Imperium's action against Samsung in Texas.[41]

Each of these parties used Sony sensors at the time of settlement and each of these parties settled *after* Sony.  If the SLA meant what Samsung argues it meant, these parties would have relied on the SLA and would have had no reason to settle. These parties understood the plain language of the SLA and recognized that their inclusion as an excluded party foreclosed the very benefits Samsung now claims.

**B.    Samsung does not face irreparable harm.**

Samsung argues that it will face irreparable harm because it will (1) incur expenses involved in defending the ITC proceedings and (2) suffer "price erosion, loss of goodwill, damage to reputation, and loss of business opportunities" if this Court does not issue a preliminary injunction.[42]  Neither alleged harm justifies a preliminary injunction here.

First, it would be against well-established law to find that Samsung's expenses involved in defending the ITC proceedings constitute irreparable harm. "Litigation

---

[40]    Sony action D.I. 531.  Research in Motion also settled with Imperium in July 2013, after Sony.  Sony action D.I. 535.

[41]    Texas Action D.I. 66.

[42]    Op. Br. at 18-19.

costs are undoubtedly undesirable and may take funds away from other endeavors, but they are not an irreparable harm in the injunction calculus." *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1381 n.8 (Fed. Cir. 2008) ("If litigation costs were a factor, injunctive relief would be warranted in every litigated patent case.").

Second, price erosion, loss of goodwill, etc., are not irreparable and inappropriate harm unless this Court assumes that the presiding judge in the ITC action and the ITC will wrongly decide the issues before them.  If the ITC decides the issues before it correctly – as it must be presumed that it will, Samsung will suffer no unjust harm and thus no irreparable harm.  To be clear, issues of the SLA are not before the ITC – Pictos explicitly excluded licensed image sensors from its request for exclusion.[43]  The ITC therefore is not being asked to exclude licensed Sony imaging sensors, but unlicensed Samsung imaging sensors that benefit from misappropriation of Pictos's trade secrets.

## C.    The balance of hardships weighs in favor of Imperium and against Samsung.

The balance of hardships is not in Samsung's favor.  While it is appropriate for a party to comply with a forum selection clause to which it agreed with another contracting party, Samsung has no right to enforce a forum selection clause to which it was not a party and was not a third-party beneficiary.  As this Court found earlier,

---

[43]    *See* supra § II.A.1.

21

"[W]hile forum selection clauses should generally be enforced, Samsung—as an alleged third party beneficiary to the Sony Agreement—did not bargain for the clause and had no 'settled expectations' regarding such."

Additionally, the ITC action continues to progress very quickly.  A *Markman* hearing is scheduled for April 26, 2021, and trial is to start on August 16, 2021. Moreover, the ITC proceedings will continue even if this Court issues the requested preliminary injunction.  As requested by Samsung, a preliminary injunction here would prevent Pictos from seeking an exclusion order against 16 mobile phone and tablet models on patent grounds.[44]  But Pictos's trade secret claims, which equally apply to those 16 mobile phone and tablet models will continue regardless.[45] Moreover, Pictos's claims against at least 46 Samsung imaging sensors that both infringe Pictos's patents and benefit from its misappropriated trade secrets will continue.[46]

### D.    Public Interest favors Imperium.

The public interest also favors Imperium, not Samsung.  Samsung is correct that the Supreme Court has affirmed enforcement of forum selection clauses,[47] but

---

[44]    Declaration of Jonathan Ference-Burke and List of Samsung Products with Sony Sensors Accused of Infringement in ITC-1231 First Amended Complaint (A001 – A002).

[45]    *See* Op. Br. at 3 n.2.

[46]    *Id.*

[47]    *See* Op. Br. at 21.

that affirmance came as between parties to a contract,[48] *not* in favor of a third-party who was explicitly excluded from that contract.

Put another way, no public interest exists in allowing a third-party to rewrite and then enforce a contract to which it was not a party.  Instead, the public interest weighs in favor of honoring Imperium's and Sony's agreement to exclude Samsung from the SLA and to give meaning to the entirety of the parties' agreement. Samsung's overreach should be rejected.

---

[48]     *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63 (2013) (enforcing forum selection clause between parties to the contract).

23

## CONCLUSION

For all of the foregoing reasons, Imperium requests that this Court deny

Plaintiff's Motion for a Preliminary Injunction.

> STRADLEY RONON
> STEVENS & YOUNG, LLP
>
>
> _____*/s/ Joelle E. Polesky*_____
> Joelle E. Polesky (ID No. 3694)
> 1000 N. West Street, Suite 1200
> Wilmington, DE 19801
> Tel: 302 295-4856
> Email: jpolesky@stradley.com
>
> *Attorneys for Defendant, Imperium IP*
> *Holdings (Cayman), Ltd.*

OF COUNSEL:
Gregory L. Ewing (admitted *pro hac vice*)
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202 204-3005
Email: gewing@potomaclaw.com

Dated: January 8, 2021

24

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., <br><br>                     Plaintiff, <br><br> v. <br><br> IMPERIUM IP HOLDINGS (CAYMAN), LTD., <br>                      Defendant. | Civil Action 15-1059-CFC |

## <u>CERTIFICATE OF COMPLIANCE</u>

Defendant Imperium IP Holdings (Cayman), Ltd.'s Opposition to Plaintiff's Preliminary Injunction Motion complies with (1) the typeface requirements of the November 6, 2019 Standing Order Regarding Briefing in All Cases ("Standing Order") because it was prepared in Times New Roman 14-point font typeface using Microsoft Word 10, and (2) the type-volume limitation of the Standing Order because it contains 4,993 words, which were counted by Microsoft Word.

                                    STRADLEY RONON
                                    STEVENS & YOUNG, LLP

                                 */s/ Joelle E. Polesky*
                                  Joelle E. Polesky (ID No. 3694)
                                  1000 N. West Street, Suite 1279
                                  Wilmington, DE 19801
                                  Telephone: (302) 295-4856
                                  Email: jpolesky@stradley.com

Dated: January 8, 2021

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD.,

                Plaintiff,

v.

IMPERIUM IP HOLDINGS (CAYMAN), LTD.,

                Defendant.

Civil Action 15-1059-CFC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 8, 2021, I caused to be served Defendant Imperium IP Holdings (Cayman), Ltd.'s Opposition to Plaintiff's Preliminary Injunction Motion, [Proposed] Order Denying Preliminary Injunction, Certificate of Compliance, and this Certificate of Service on all counsel of record via email and caused to be served [Proposed] Order Denying Preliminary Injunction, Certificate of Compliance, and this Certificate of Service on all counsel of record via CM/ECF.

                                          */s/ Joelle E. Polesky*
                                      Joelle E. Polesky (ID No. 3694)