IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> IMPERIUM IP HOLDINGS (CAYMAN), ) <br> LTD., ) <br> ) <br> Defendant. ) | C.A. No. 15-1059-CFC-CJB |

**PLAINTIFF SAMSUNG ELECTRONICS CO., LTD.'S
REPLY BRIEF IN SUPPORT OF
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

OF COUNSEL:
Jesse J. Jenner
Steven Pepe
Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Samuel L. Brenner
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Plaintiff Samsung
Electronics Co., Ltd.*

Douglas H. Hallward-Driemeier
Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
(202) 508-4600

Dated: January 15, 2021

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

I. THIS DISPUTE FALLS SQUARELY WITHIN THE SLA'S FORUM SELECTION CLAUSE ...............................................................................1

II. SAMSUNG HAS SHOWN AT LEAST A REASONABLE LIKELIHOOD OF SUCCESS ON ITS CLAIM THAT IMPERIUM'S ITC COMPLAINT ACCUSES LICENSED PRODUCTS ..........................................................2

    A. The Products at Issue Are Covered Third Party Products ....................3

        1. Clause (i) ........................................................................4

        2. Clause (ii) .......................................................................6

    B. Imperium Misreads the Excluded Parties Clause .................................6

    C. Imperium's Extra-Record Speculation Is Wrong..................................8

III. IMPERIUM FAILS TO REBUT SAMSUNG'S SHOWING ON THE OTHER PRELIMINARY INJUNCTION FACTORS....................................9

# **TABLE OF AUTHORITIES**

*Atlantic Marine Constr. Co. v. U.S. Dist. Ct. of the W. Dist. of Tex.*,
   571 U.S. 49 (2013) ................................................................................... 10, 11

*ECB USA, Inc. v. Savencia, S.A.*,
   C.A. No. 19-731, 2020 WL 5369076 (D. Del. Sept. 8, 2020) ........................... 11

*General Protecht Grp., Inc. v. Leviton Mfg. Co.*,
   651 F.3d 1355 (Fed. Cir. 2011) ........................................................ 2, 9, 10, 11

*Majkowski v. Am. Imaging Mgmt. Servs., LLC*,
   913 A.2d 572 (Del. Ch. 2006) .............................................................................. 8

*In re McGraw-Hill Global Educ. Holdings LLC*,
   909 F.3d 48 (3d Cir. 2018) ........................................................................... 10, 11

*Peters v. Ryan*,
   C.A. No. 16-1332, 2017 WL 1393692 (D. Del. Apr. 13, 2017) ........................... 2

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*,
   616 A.2d 1192 (Del. 1992) .................................................................................. 9

*Silfab Solar, Inc. v. United States*,
   892 F.3d 1340 (Fed. Cir. 2018) ........................................................................... 3

*Singer Mgmt. Consultants, Inc. v. Milgram*,
   650 F.3d 223 (3d Cir. 2011) ................................................................................ 3

*Swipe Acquis. Corp. v. Krauss*,
   C.A. No. 2019-0509, 2020 WL 5015863 (Del. Ch. Aug. 25, 2020) .................... 8

*Texas Instruments Inc. v. Tessera, Inc.*,
   231 F.3d 1325 (Fed. Cir. 2000) ........................................................................... 2

*Weyerhaeuser Co. v. Domtar Corp.*,
   61 F. Supp. 3d 445 (D. Del. 2014) ...................................................................... 8

All emphases in text are added unless otherwise noted.

Imperium focuses much of its Opposition (D.I. 138) on defeating strawmen. To the extent Imperium does address Samsung's substantive positions, Imperium's arguments crystallize the parties' dispute. Samsung has shown that certain products that Imperium has accused in the ITC (listed in A002) are licensed under the SLA; Imperium says those products are not licensed. That dispute about the scope of the SLA is within this Court's "exclusive jurisdiction" under that agreement and must be litigated here. A012 (§ 6.5).

To resolve this dispute, the Court needs to determine only whether Samsung has shown at least a reasonable likelihood that the accused products are "Covered Third Party Products," as defined in the SLA. While Imperium argues that only Sony *sensors* are licensed, the plain and unambiguous language of the definition of "Covered Third Party Products" protects not just the sensors (as "Licensed Product[s]") but also Samsung's products incorporating those sensors (as "Third Party Product[s]"). A004. Because Imperium has accused Covered Third Party Products in the ITC, an injunction should issue.

I.  **THIS DISPUTE FALLS SQUARELY WITHIN THE SLA'S FORUM SELECTION CLAUSE**

The parties' briefs squarely frame a dispute within this Court's exclusive jurisdiction. Samsung's opening brief (D.I. 124 at 12-15) explains that Imperium's infringement assertions in the ITC encompass Covered Third Party Products. Imperium disputes this, responding that it "explicitly excluded validly licensed

1

products" from its ITC allegations. D.I. 138 at 8. The ITC would thus have to determine what products are licensed under the SLA to resolve this dispute, but the SLA unambiguously specifies this Court as the exclusive jurisdiction for resolving such disputes.

Under the FSC and controlling precedent, the parties' dispute about the SLA's scope and how it applies to Samsung products is within this Court's "exclusive jurisdiction," which covers "all disputes and litigation regarding [the SLA], its construction[,] and matters connected with its performance" and "any disputes…arising with respect to the subject matter of this Agreement." A012 (§ 6.5). *Texas Instruments*, *General Protecht*, and other cases show that questions of the applicability of licenses in the context of infringement disputes are subject to forum selection clauses. D.I. 124 at 16-18 & n.7. Imperium "fail[ed] to contest" Samsung's arguments in the opening brief about the scope of the FSC and has forfeited the point. *See Peters v. Ryan*, C.A. No. 16-1332-RGA, 2017 WL 1393692, at *2 (D. Del. Apr. 13, 2017).

## II. SAMSUNG HAS SHOWN AT LEAST A REASONABLE LIKELIHOOD OF SUCCESS ON ITS CLAIM THAT IMPERIUM'S ITC COMPLAINT ACCUSES LICENSED PRODUCTS

On the core issue whether certain products it has accused in the ITC are licensed, Imperium spends much of its Opposition building strawmen and knocking

2

them down.  For example, contrary to Imperium's brief, *see* D.I. 138 at 14-15, Samsung has never argued that it has a "sub-license."

Rather, the key question is whether Samsung has shown a reasonable likelihood that the products accused of infringement in the ITC are licensed as "Covered Third Party Products."  Importantly, at this stage, Samsung does not need to prove its view conclusively, or even do so by a preponderance of the evidence. *See Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc) ("A 'likelihood' does not mean more likely than not.").  Samsung need only make a showing the Federal Circuit has described as "at least a fair chance of success on the merits." *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (quotation marks and citation omitted).

### A.   The Products at Issue Are Covered Third Party Products

Imperium's suggestion that "only Sony image sensors are licensed," D.I. 138 at 15, ignores the SLA's plain text.  The SLA is unambiguous that entire products incorporating Sony image sensors, including Samsung's smartphones and tablets, are licensed.  Specifically, the SLA's plain language protects not only the Sony image sensors (as "Licensed Product[s]") but also "(i) Third Party products or services designed and marketed to operate in conjunction with or offered for sale or sold via a Licensed Product; or (ii) Third Party Products or services that when running, using, operating within, or otherwise benefiting from the functionality of a

Licensed Product is covered by any claim of the Licensed Patents." A004. The definition of Covered Third Party Products is important because Imperium contracted not to assert infringement claims against such products of Licensee Third Parties. A006 (§ 2.6).

The Samsung products at issue qualify under either prong.

### 1. Clause (i)

Imperium's only arguments as to why this clause might not apply are that the conclusions of Samsung's expert Kenneth Parulski suffer from "facial inadequacy" and that Mr. Parulski has "not been, and is unlikely to be, qualified as an expert in marketing." D.I. 138 at 16, 18. Neither argument undercuts the plain language of the agreement and Samsung's showing of a reasonable likelihood of success.

First, Imperium's argument rewrites the definition of "Covered Third Party Products." In Imperium's view, the image sensor itself must be marketed. D.I. 138 at 16-18. But the SLA's plain and unambiguous text—"*products* or services designed and marketed to *operate in conjunction with* or offered for sale or sold via a Licensed Product"—is clear that it covers a product (not merely some component thereof) that is "designed and marketed" to "operate in conjunction with" a Licensed Product. These products fit the definition because Samsung designed and markets its products to operate in conjunction with the Sony image sensors. Nothing in the contractual language requires express marketing of Sony image sensors.

The SLA's plain and unambiguous language conforms to the realities of Sony's customers' products. Image sensors do not operate in isolation. Samsung's products include hundreds of components, and Samsung "marketed" its products based on the functionality of some of those components, including the built-in cameras that incorporate the licensed Sony image sensors. For example, Mr. Parulski discusses how Samsung markets the "Time of Flight (ToF) camera on…[the] Galaxy S20+ and S20 Ultra," two products that are the subject of this Motion and that "include a Sony Time of Flight sensor (IMX518)." A237-38 (¶ 111); *see also* A234-41 (¶¶ 106-18) (explaining why the products accused in the ITC FAC are "marketed to operate in conjunction with or offered for sale or sold via a Licensed Product."). Samsung does not market its devices based on other components, such as screws, heat sinks, or the adhesive that holds a phone together.

Second, Mr. Parulski is more than competent and qualified to testify here. He worked in the digital camera industry for over thirty years, leading various teams in developing consumer digital cameras. A220-22 (¶¶ 7-14). Lay and expert trial witnesses for Samsung and Imperium in Texas testified regarding precisely the types of "marketing" documents analyzed in Mr. Parulski's report. A239-41 (¶¶ 115-18).

Ultimately, contrary to Imperium's argument, clause (i) of "Covered Third Party Products" does not require that the Sony component be marketed expressly.

5

Rather, it requires that the third-party product be marketed in a way that shows it operates using that Sony component. This is precisely what Samsung does.

### 2. Clause (ii)

Imperium contends that the accused products do not fit the second prong of the definition of "Covered Third Party Products" because Samsung has yet to concede infringement of the Licensed Patents. D.I. 138 at 19. At this stage, Samsung does not have to concede anything. It is properly relying on Imperium's allegations in the ITC FAC that Samsung's products with Sony sensors are covered by Imperium's patents. D.I. 124 at 14-15. If Imperium is right, then Samsung products that include Sony sensors are licensed as Covered Third Party Products under clause (ii). But to wait to resolve that question at the ITC would render the FSC and the SLA's protections illusory. This Court has "exclusive jurisdiction" over that determination.

### B. Imperium Misreads the Excluded Parties Clause

Imperium's argument regarding the Excluded Parties clause, SLA § 2.8 (D.I. 138 at 9-13), avoids addressing how that clause explicitly treats "Covered Third Party Products," instead interpreting the language as though it were solely limited to protecting "Licensed Products" (*e.g.*, image sensors). For example, Imperium argues without support that "Sony and Imperium recognized by their agreement that an entity like Samsung might include a licensed Sony imaging sensor as well as an

unlicensed Samsung sensor in its products" and allegedly "agreed that such an entity would benefit from the SLA for 'that Sony imaging sensor' but that the license would not extend to Samsung's imaging sensor." D.I. 138 at 12. The SLA's plain language does not support that reading.

The plain language of the key portion of the "Excluded Parties" clause is unambiguous: "Excluded Party shall not, however, include any Licensee Third Parties *with respect to...Covered Third Party Products*...." A006-07. Again, Covered Third Party Products are not simply the "Licensed Products" (*e.g.*, Sony sensors). Rather, they are third-party products that are "designed and marketed to operate in conjunction with…a Licensed Product," or products that "when running, using, operating within, or otherwise benefiting from the functionality of a Licensed Product [are] covered by any claim of the Licensed Patents." A004. Thus, the SLA's plain language protects the entire Covered Third Party Product based on the inclusion of a Sony image sensor, and the Excluded Parties clause confirms that. Contrary to Imperium's suggestion, the SLA's protections do not turn on whether a Covered Third Party Product also happens to include other unlicensed components. The parties could easily have added a carve-out to that effect, but they did not.

In arguing otherwise, Imperium reads too much into the parenthetical at the end of § 2.8. That language, offered "by way of example and not of limitation," is directed to Licensed Products and, in any event, is subordinate to the clear and

controlling language that a Licensee Third Party is not an Excluded Party with respect to Covered Third Party Products. *See Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 450-51 (D. Del. 2014) ("[u]nder Delaware law, contract language such as 'including without limitation' and 'including but not limited to' is interpreted broadly," and interpreting examples offered "without limitation" as "merely illustrative"). Imperium also incorrectly asserts that Samsung's reading renders § 2.8 superfluous. On the contrary, under Samsung's correct reading, the "Excluded Parties" clause plays a narrow, but clear, role in limiting future developments that might change the license's scope by precluding any "Excluded Party" from becoming an "Affiliate." *See*, *e.g.*, A003-04. It is not "meaningless surplusage." *Swipe Acquisition Corp. v. Krauss*, C.A. No. 2019-0509-PAF, 2020 WL 5015863, at *5-6 (Del. Ch. Aug. 25, 2020) (finding clauses had independent meaning and rejecting argument that one was surplusage). Even if it were, the rule against surplusage is "only…a guide" that yields in the face of the plain and unambiguous language of a contract. *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 588 (Del. Ch. 2006).

### C.     Imperium's Extra-Record Speculation Is Wrong

Imperium cannot undercut the SLA's plain language by hypothesizing about various parties' states of mind. For example, Imperium asserts that, while settling other cases, it "anticipated bringing infringement claims against Samsung" and

"explicitly excluded Samsung's products as licensed products."  D.I. 138 at 3-4.  Regardless of Imperium's purported intent, the actual language of the SLA, which is "[c]lear and unambiguous," controls.  *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).  In any event, Imperium offers no evidentiary support; Imperium merely cites the SLA itself and Samsung's second amended complaint.  D.I. 138 at 4 n.3.

Imperium also postulates that, under Samsung's reading, parties sued by Imperium that used Sony sensors but settled after Sony "would have relied on the SLA and would have had no reason to settle."  D.I. 138 at 20.  This argument wrongly assumes that all the accused products used Sony sensors (which Imperium acknowledges was not the case, *id.* at 3) and that Imperium promptly disclosed the SLA's terms to those parties.  Ultimately, those parties may have had any number of reasons for settling, including a pragmatic desire to avoid investigating and litigating licensing issues after already engaging in litigation.

### III. IMPERIUM FAILS TO REBUT SAMSUNG'S SHOWING ON THE OTHER PRELIMINARY INJUNCTION FACTORS

*Irreparable Harm*: Imperium offers little in response to Samsung's showing of irreparable harm.  First, Imperium mischaracterizes Samsung's argument as one based on monetary harm.  However, *General Protecht Group, Inc. v. Leviton Manufacturing Co.*, binding precedent that Imperium ignores, holds that being deprived of a "bargained-for forum" and having to litigate license issues "on

9

multiple fronts at the same time" constitutes irreparable harm. 651 F.3d 1355, 1363-65 (Fed. Cir. 2011). As discussed below, Samsung is entitled to the bargained-for forum as an intended third-party beneficiary. Second, Imperium offers the circular claim that "price erosion, loss of goodwill, etc., are not irreparable and inappropriate harm unless this Court assumes that" the ITC will "wrongly decide the issues before [it]." D.I. 138 at 21. That argument is wrong. The question is not whether the ITC could analyze the SLA; the question is whether Samsung has shown more than a "reasonable likelihood" that Imperium has accused licensed products in the ITC, triggering those harms.

*Balance of Hardships and Public Interest*: Imperium's argument on these factors relies on outdated law. The unattributed quote on page 22 of Imperium's Opposition appears to be from the Court's 2017 opinion granting Imperium's Motion to Dismiss. D.I. 44 at 9. Not only did the Third Circuit vacate that decision, D.I. 57, the quoted language is no longer good law after the Third Circuit's decision in *In re McGraw-Hill Global Educational Holdings LLC*, which extended *Atlantic Marine* to intended third-party beneficiaries. When "a non-signatory intended third-party beneficiary brings a breach of contract claim," and "expressly bases [its] claim on the terms of the contract," and when the "breach of contract claim falls within the scope" of the forum selection clause in the contract, "there is no question that the

10

non-signatory is bound by the forum selection clause." *McGraw-Hill*, 909 F.3d 48, 70 (3d Cir. 2018).

Under *McGraw-Hill*, Samsung, as an intended third-party beneficiary, has every right to enforce the SLA's terms, including the FSC. *McGraw-Hill* and *Atlantic Marine* together establish that the public interest firmly favors enforcing the FSC. Moreover, Imperium's attempt (D.I. 138 at 13 n.22) to incorporate by reference arguments from other briefs on the third-party-beneficiary issue is improper, *ECB USA, Inc. v. Savencia, S.A.*, C.A. No. 19-731-RGA, 2020 WL 5369076, at *2 n.6 (D. Del. Sept. 8, 2020), and, in any event, wrong for the reasons Samsung previously explained in its brief (D.I. 124 at 8, 12-13). Finally, Imperium faces no unfairness from litigating SLA issues in this Court. "Having contracted for a specific forum, [Imperium] should not be heard to argue that the enforcement of the contract into which it freely entered would cause hardship." *General Protecht*, 651 F.3d at 1365-66. Granting Samsung's Motion will correctly keep all SLA-related issues here, as the SLA requires, while the ITC Action proceeds on other non-SLA issues.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Andrew E. Russell* |
|  | John W. Shaw (No. 3362) |
|  | Andrew E. Russell (No. 5382) |
|  | SHAW KELLER LLP |
|  | I.M. Pei Building |
|  | 1105 North Market Street, 12th Floor |
| OF COUNSEL: | Wilmington, DE 19801 |
| Jesse J. Jenner | (302) 298-0700 |
| Steven Pepe | jshaw@shawkeller.com |
| Kevin J. Post | arussell@shawkeller.com |
| Alexander E. Middleton |  |
| ROPES & GRAY LLP | *Attorneys for Plaintiff Samsung* |
| 1211 Avenue of the Americas | *Electronics Co., Ltd.* |
| New York, NY 10036 |  |
| (212) 596-9000 |  |

Samuel L. Brenner
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Douglas H. Hallward-Driemeier
Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
(202) 508-4600

Dated: January 15, 2021

12

## CERTIFICATION OF COMPLIANCE

I hereby certify that this brief complies with the word count limitations of this Court's standing scheduling order because this brief contains 2487 words. This brief complies with the type and font limitations of this Court's standing scheduling order because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

>
> */s/ Andrew E. Russell*
> John W. Shaw (No. 3362)
> Andrew E. Russell (No. 5382)
> SHAW KELLER LLP
> I.M. Pei Building
> 1105 North Market Street, 12th Floor
> Wilmington, DE 19801
> (302) 298-0700
> jshaw@shawkeller.com
> arussell@shawkeller.com
> *Attorneys for Plaintiff Samsung Electronics Co., Ltd.*

Dated: January 15, 2021