IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| | ) | **Redacted- Public Version** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1059-CFC-CJB |
| | ) | |
| IMPERIUM IP HOLDINGS (CAYMAN), LTD., | ) | ███████████████ |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF SAMSUNG ELECTRONICS CO., LTD.'S BRIEF
## IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

OF COUNSEL:

Jesse J. Jenner
Steven Pepe
Kevin J. Post
Alexander E. Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Samuel L. Brenner
Scott S. Taylor
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Dated: March 8, 2021

Douglas H. Hallard-Driemeier
Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
(202) 508-4600

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*
*Samsung Electronics Co., Ltd.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

TABLE OF ABBREVIATIONS ........................................................... iv

INTRODUCTION ...............................................................................1

NATURE AND STAGE OF PROCEEDINGS ........................................2

     A.    The Texas Action ................................................................3

     B.    The Delaware Action............................................................3

SUMMARY OF ARGUMENT ..............................................................4

ARGUMENT ....................................................................................4

I.      LEGAL STANDARD ................................................................4

II.     IMPERIUM BREACHED THE SLA BY RELYING ON SONY SENSORS OR THE EXPLOITATION THEREOF IN CLAIMING INFRINGEMENT OF THE '029 PATENT...................................................................5

     A.    The SLA Prohibits Imperium from Relying on Sony Sensors or the Exploitation of Those Sensors in Claiming Infringement of the '029 Patent by Samsung ...............................................................6

          1.    As the Court Previously Determined, Samsung is an Intended Third-Party Beneficiary of the SLA ...........................................7

          2.    The SLA's Covenant-Not-To-Assert Prohibits Imperium from Relying on Sony Image Sensors, or the Exploitation Thereof, to Satisfy any Claim Element of the '029 Patent............................8

     B.    Imperium's Breach of the Covenant in the Texas Action....................9

          1.    Imperium Accused Sony-Only Products of Infringing the '029 Patent........................................................................10

               (a)    The Accused Sony-Only Digital Cameras ....................10

(b)    The Accused Sony-Only Smartphone Products ............11

2.    Claims 1, 6, 14, and 16 of the '029 Patent Each Require an
Image Sensor and a Supplemental Lighting Source That
Generates a "Preparatory Light" (Pre-Flash)...........................12

(a)    Claims 14 and 16 Explicitly Recite an Image Sensor ....12

(b)    Claims 1 and 6 also Require an Image Sensor ...............13

(c)    Claims 1, 6, 14, and 16 Need A Supplemental Lighting
Source in Order to "Generate a Preparatory Light" .......14

3.    Imperium Breached the Covenant by Relying on Licensed Sony
Image Sensors (or the Exploitation Thereof) in Alleging
Infringement of the '029 Patent .................................................16

(a)    Imperium Relied on Sony Image Sensors to Satisfy the
"Image Sensor" Limitation of Claims 14 and 16 ..........16

(b)    Imperium Relied on Sony Image Sensors (or the
Exploitation Thereof) to Satisfy Elements of Claims 1
and 6 ................................................................................18

C.    Imperium's Breach Damaged Samsung .............................................19

CONCLUSION ......................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)....................................................................................5

*Insituform of N. Am., Inc. v. Chandler*,
    534 A.2d 257 (Del. Ch. 1987) .................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)....................................................................................5

*Rsrvs. Dev. LLC v. Severn Sav. Bank*,
    Civ. A. No. 2502, 2007 WL 4054231 (Del. Ch. Nov. 9, 2007) .........................7

*Trap Rock Industries, Inc. v. Local 825, International Union of
    Operating Engineers*, 982 F.2d 884 (3d Cir. 1992)...............................5

*Triple C Railcar Serv., Inc. v. City of Wilmington*,
    630 A.2d 629 (Del. 1993) .........................................................................7

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) .........................................................................5

*Wishkin v. Potter*,
    476 F.3d 180 (3d. Cir. 2007) ...................................................................5

**Other Authorities**

Fed. R. Civ. P. 56(a)...................................................................................4

## TABLE OF ABBREVIATIONS

| Abbreviation | Explanation |
|---|---|
| Covenant | Section 2.6, second sentence, of the SLA |
| Imperium | Imperium IP Holdings (Cayman), Ltd., now known as Pictos Technology, Inc. |
| ITC | International Trade Commission |
| Samsung | Samsung Electronics Co., Ltd |
| SLA | Settlement and License Agreement between Imperium and Sony Mobile and Sony Corporation, dated May 11, 2013 |
| Sony | Sony Mobile and Sony Corporation |
| Sony Mobile | Sony Ericsson Mobile Communications (USA) Inc. |
| the '029 patent | U.S. Patent No. 7,092,029 |
| The Texas Action | *Imperium IP Holdings (Cayman), Ltd v. Samsung Electronics Corp.*, Civ. No. 4:14-cv-00371 (E.D. Tex. 2015) |

\*      All emphasis added unless otherwise indicated

## **INTRODUCTION**

Samsung respectfully requests partial summary judgment that Imperium breached the covenant of the second sentence of Section 2.6 of the SLA through certain of its infringement allegations in the Texas Action.  This covenant is unambiguous: Imperium "covenants not to rely on any Licensed Product or the exploitation thereof (in whole or in part) to satisfy any element of any claim of the Licensed Patents" (the "Covenant").  Imperium breached the Covenant by relying in the Texas Action on the Sony sensors (or the exploitation thereof) in certain Samsung products in alleging infringement of the '029 patent.

The relevant facts establishing Imperium's breach are undisputed.  In 2014, Imperium asserted in the Texas Action a licensed patent—the '029 patent—against Samsung.  Asserted claims 14 and 16 of the '029 patent include an explicit "image sensor" claim limitation, and therefore require an image sensor.  And although asserted claims 1 and 6 do not use the words "image sensor," they similarly require the use or exploitation of an image sensor to satisfy the "capturing a preparatory image" claim limitation.  These four claims were asserted against (among other products) the 41 digital cameras and 5 smartphones that are at issue in this motion. In particular, those 41 digital cameras each include only one image sensor—which, for these 41, is a Sony sensor.  The 5 smartphones include two cameras—a main camera on the rear of the phone that uses only a Sony sensor and was accused by

Imperium and a front camera that uses a non-Sony sensor.  The Sony sensors in these 46 products (the "Sony-Only" products[1]) are "Licensed Products" under the SLA. Imperium, in asserting that the Sony-Only products infringed the '029 patent, relied on these licensed Sony sensors (or the exploitation thereof) to satisfy the "image sensor" limitation of claims 14 and 16 and the "capturing a preparatory image" limitation of claims 1 and 6, thereby breaching the Covenant.  Samsung incurred, among other damages, legal fees defending against Imperium's allegations with respect to these products—the type of damages the SLA explicitly awards to an injured party.

Samsung's motion for partial[2] summary judgment should be granted.

## NATURE AND STAGE OF PROCEEDINGS

Samsung filed its original complaint in this action on November 16, 2015, in response to Imperium's breach of the SLA in the underlying Texas Action.  D.I. 2.

---

[1] "Sony-Only" products are: (1) the 41 Samsung digital cameras accused of infringing the '029 patent that contain only a Sony image sensor; and (2) the 5 Samsung smartphones accused of infringing the '029 patent that, in the main camera, contain only a Sony image sensor.  SOF#16; *see* A808-12 (refer to yellow and blue highlight annotations).

[2] This motion focuses on a narrow subset of the claims in this case.

## A.     The Texas Action

On June 9, 2014, Imperium filed its lawsuit against Samsung in the Texas Action.  SOF#6.[3]  There, Imperium asserted claims 1, 6, 7, 14, and 16 of the '029 patent against Samsung, as well as various claims from two additional patents.  A070-73 (1/26/15 Inf. Conts.); SOF#6-7.  In September 2015, Samsung provided notice to Imperium that it was in breach of the SLA and demanded that Imperium withdraw any infringement allegations relating to Samsung products licensed under the SLA.  SOF#8.  Imperium refused.  SOF#9.  On November 25, 2015, less than three months before trial and just over a week after this action was filed, Imperium filed a Notice of Asserted Claims and Accused Products, purporting to "narrow [the] case for trial."  SOF#10.  With that notice, Imperium dropped claims 14 and 16 of the '029 patent.  *See id*.

## B.     The Delaware Action

Samsung seeks damages and a judgment that Imperium breached multiple provisions of the SLA by asserting the three patents in the Texas Action against products covered by the SLA, and that Imperium continues to breach the SLA by asserting four patents against Samsung at the ITC against products that are similarly

---

[3] Accompanying Samsung's motion is a separate Concise Statement of Facts.  Citations to the statement of facts is in the format "SOF#[paragraph number]."  Citations of the format "A[number]" are to the Appendix attached to the Concise Statement of Facts.

covered.  D.I. 133.  This motion is directed to Imperium's breach related to just one of these patents—the '029 patent asserted in the Texas Action.

Discovery has closed.  This case is scheduled for trial on July 19, 2021.  D.I. 101 (¶ 19).

## SUMMARY OF ARGUMENT

Partial summary judgment that Imperium breached its contractual commitment to Samsung under the SLA should be granted because:

1. Samsung is a third-party beneficiary of the SLA;

2. Under the SLA, Imperium covenanted not to rely on Sony image sensors or the exploitation of such sensors to satisfy any element of any claim of the '029 patent; and

3. In the Texas Action, Imperium, including through its expert Dr. Wright, relied on Sony image sensors (or the exploitation thereof) in the Sony-Only products to satisfy elements of claims 1, 6, 14, and 16 of the '029 patent.

## ARGUMENT

## I.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  No genuine issue of material fact exists unless the record taken as a whole could lead a rational trier of fact to find in favor of the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Only disputes respecting facts that might affect the outcome of the suit will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party opposing summary judgment cannot merely rest upon allegations, general denials, or vague statements, *Trap Rock Industries, Inc. v. Local 825, International Union of Operating Engineers*, 982 F.2d 884, 890 (3d Cir. 1992), but must produce sufficient evidence on which the jury could reasonably find in its favor, *Anderson*, 477 U.S. at 252. Summary judgment is proper if, after examining the evidence of record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, the Court concludes there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d. Cir. 2007).

## II. IMPERIUM BREACHED THE SLA BY RELYING ON SONY SENSORS OR THE EXPLOITATION THEREOF IN CLAIMING INFRINGEMENT OF THE '029 PATENT

The elements of breach of contract under Delaware law (which applies per SLA § 6.5 (A015)) are: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). There is no dispute that the SLA exists. Samsung, as a

third-party beneficiary of the SLA, can rely on the protections of the SLA, including the Covenant.  Imperium breached the Covenant by relying on Sony sensors in claiming in the Texas Action that Samsung's Sony-Only products infringe claims of the '029 patent, causing substantial damage to Samsung.

### A.    The SLA Prohibits Imperium from Relying on Sony Sensors or the Exploitation of Those Sensors in Claiming Infringement of the '029 Patent by Samsung

Years ago, Sony Corporation paid Imperium a substantial sum to obtain protection for all of Sony's products for the benefit of itself and its customers. SOF#3; A006.  Imperium, however, has repeatedly ignored its promises in the SLA in asserting its patents against Samsung (a Sony customer).

Imperium's litigation campaign started in 2011 when Imperium sued Sony Mobile (and others) in the Eastern District of Texas for patent infringement.  SOF#1. Imperium and Sony settled in May 2013, when they, along with Sony Mobile's parent company, Sony Corporation (a non-party to that case), entered into the SLA. SOF#2.  Under the SLA, Sony received licenses, releases, and covenants relating to Imperium's patent portfolio covering all of Sony's products, with Imperium agreeing to extend certain of these protections to third-party customers of Sony products, such as Samsung.  *See* SOF#3, 5.  One such obligation includes the Covenant (a covenant-not-to-assert), in which Imperium promised not to rely on

licensed Sony products, or the exploitation thereof, to satisfy any element of any claim of a Licensed Patent.  SOF#5.e.

### 1.  As the Court Previously Determined, Samsung is an Intended Third-Party Beneficiary of the SLA

Delaware law allows a stranger to a contract to enforce a contractual promise if the contract was made for that party's benefit.  *Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 633 (Del. 1993).  Critical here is whether it was "the promisee's intention to confer direct benefits upon a third person," in which case the third party may "require the promisor to perform or respond in damages," or whether the "third party happens to benefit from the performance of the promise either coincidentally or indirectly."  *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 269 (Del. Ch. 1987); *see also Rsrvs. Dev. LLC v. Severn Sav. Bank*, Civ. A. No. 2502, 2007 WL 4054231, at *18 (Del. Ch. Nov. 9, 2007).

The SLA confirms Sony's intent to confer benefits to Sony's customers, including Samsung, and that those benefits were material to the contract. ■

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ to obtain a further license to Imperium's patents "for all past, present and future products" of Sony.  SOF#3; A006.  Additionally, according to the SLA's "License" provision, Licensee Third Parties—including "purchasers" and "customers" of any "Licensed Product" (A007), such as Samsung—"are licensed

7

under [the SLA] if and only to the extent they … use … Licensed Products … with respect to such Licensed Products." SOF#5.d. The SLA also extends to Samsung *insofar* as Samsung "is a purchaser" of a Sony product such as "a Sony imaging sensor." *See* A009-010 (§ 2.8 & Sched. 2.5). Lastly, the SLA expressly permits Sony's customers (like Samsung) to assert claims against Imperium to recover "all reasonable costs, fee and damages" caused by Imperium's breach of the Section 2.6 Covenant. A009 (§ 2.6).

The Court relied on these facts in finding that "Samsung is a third-party beneficiary of the SLA." SOF#4. Samsung submits that the Court correctly decided this issue.

### 2. The SLA's Covenant-Not-To-Assert Prohibits Imperium from Relying on Sony Image Sensors, or the Exploitation Thereof, to Satisfy any Claim Element of the '029 Patent

The Covenant, SLA Section 2.6, recites in relevant part:

> Licensor, on behalf of itself and its successors and assigns, further covenants not to rely on any Licensed Product or the exploitation thereof (in whole or in part) to satisfy any element of any claim of the Licensed Patents.

SOF#5.e. "Licensor" means Imperium. SOF#5.a. A "Licensed Product" includes "any past, present, or future products … of Licensee [Sony]," and thus includes the Sony image sensors that Samsung uses in its products. SOF#5.b. "Licensed Patents" includes the '029 patent. SOF#5.c.

8

Substituting in these definitions, the Covenant reads: "[Imperium] … covenants not to rely on any [Sony image sensor] or the exploitation thereof (in whole or in part) to satisfy any element of any claim of the ['029 patent]."  The Covenant is clear and unambiguous:  Imperium promised not to rely on a Sony image sensor (or the exploitation thereof) in demonstrating that a product practices any Licensed Patent, including the '029 patent.  Confirming Imperium's obligation under the Covenant to third-party beneficiary Samsung, the Court stated:

> [Imperium] can't go forward and argue a theory of infringement based on the existence of a Sony image sensor in the product, I think you are right. [Samsung] should win on that, not under a covered third-party product definition, but under a licensed product definition, and under the second prong of the covenant not to sue in, I believe it's Section 2.6 of the SLA.

A034 (103:21-104:2).  Imperium, however, did just that—it relied on the existence of Sony image sensors in Samsung's products in arguing infringement.

## B.    Imperium's Breach of the Covenant in the Texas Action

As explained below, the use or exploitation of an image sensor is required to practice claims 1, 6, 14, and 16 of the '029 patent.[4]  To show infringement for certain elements of these claims, Imperium, through its expert Dr. Wright, relied on licensed Sony image sensors incorporated in the 46 accused Sony-Only products at issue in this motion.  Because these Sony image sensors are licensed to the '029 patent under

---

[4] To simplify this motion, Samsung is not seeking summary judgment relating to asserted claim 7.

9

the SLA (*see* § II.A.2, *supra*), Imperium's allegations breached the Section 2.6 Covenant.

## 1. Imperium Accused Sony-Only Products of Infringing the '029 Patent

Imperium, through the report of its expert, Dr. Wright, accused 41 digital cameras with only Sony image sensors and 5 smartphones with only Sony image sensors for their main camera of infringing claims 1, 6, 14, and 16 of the '029 patent. SOF#11-16, 24.[5]  As noted above, these 41 digital cameras and 5 smartphones are the "Sony-Only" products. *See supra* n.1.

### (a) The Accused Sony-Only Digital Cameras

The 41 accused Sony-Only digital cameras incorporate only one image sensor—a Sony image sensor—as reflected in Attachment A to Samsung's interrogatory responses in the Texas Action ("Attachment A").  SOF#12; A808-12 (Attachment A).  For example, ███████████████████████████████ ██████████████████████████████████████████████████████ █████████████████████████████████)."  *Id.*  For ease of reference, these 41 digital cameras are highlighted in yellow in Attachment A in the

---

[5] Dr. Wright supplemented his expert report as to the '029 patent twice, adding citations to certain third-party documents in several claim charts.   These supplemental charts included the same infringement theories as those in his original report and charts.

Appendix to Samsung's Concise Statement of Facts.  A808-12; *see also* SOF#12, 22.

### (b)    The Accused Sony-Only Smartphone Products

The 5 accused Sony-Only smartphones have two cameras—a "main" camera on the rear of the phone and a "VT"[6] camera on the front.  SOF#13; *see also* A832 (Galaxy Note 2 User Manual); A838 (Galaxy Note 3 User Manual); A844-45 (Galaxy Note 4 User Manual); A851-52 (Galaxy Note Edge User Manual); A858-61 (Galaxy S5 User Manual).  The Sony-Only smartphones incorporate only a Sony image sensor in their main cameras, which, as explained below, is the only camera with an associated flash that could satisfy the asserted claims of the '029 patent.  *Id.*; SOF#14-15; *see also* A832; A838; A844-45; A851-52; A858-61.  For example, ███

████████████████████████████████████████████████████████

██████████████████████████████████  A808.  For ease of reference, these 5 Sony-Only smartphones are highlighted in blue in Attachment A in the Appendix to Samsung's Concise Statement of Facts.  A808-809.

---

[6] "VT" stands for video teleconference.  A819 (246:2-4).  "VT Camera" is also colloquially known as a "selfie" camera.

### 2. Claims 1, 6, 14, and 16 of the '029 Patent Each Require an Image Sensor and a Supplemental Lighting Source That Generates a "Preparatory Light" (Pre-Flash)

In non-technical terms, the '029 patent is directed to a camera that generates a pre-flash (i.e. "preparatory light") using a flash unit (i.e., a "strobe" or supplemental lighting source) while an image sensor captures a preliminary image. *See* A078-079 (Wright Rpt.); A872-875 (Parulski Rpt., ¶¶ 121-125); A049 ('029 patent, Abstract). This preliminary image is used as a reference in determining the appropriate flash duration for the actual picture subsequently captured by the camera. *See* A078-079 (Wright Rpt.); A875-877 (Parulski Rpt., ¶¶ 126-128); A049 ('029 patent, Abstract).

Relevant to this motion, claims 1, 6, 14, and 16 of the '029 patent require an image sensor or the exploitation of one. With particular regard to the accused smartphones, the "generat[e/ing] a preparatory light" limitations are relevant because they establish which of the two cameras in those smartphones Imperium accused of infringement.

#### (a) Claims 14 and 16 Explicitly Recite an Image Sensor

Claim 14 (and dependent claim 16) of the '029 patent recites, in relevant part (SOF#17):

- "[a] digital imaging system" (element 14[a]);
- "a processor electrically connected to a strobe" (element 14[b]); and

12

- "*an image sensor* coupled to a memory, where a supplemental strobe duration stored in the memory is generated from a preparatory image received at the processor from *the image sensor* when the strobe is activated to generate a preparatory light for a predetermined preparatory duration..." (element 14[c]).

As Imperium has admitted, an image sensor is required for a product to practice claim 14. SOF#19 (citing Wright Dep. Tr. at A821 (256:24-257:6), A825 (273:6-11)).

### (b)   Claims 1 and 6 also Require an Image Sensor

Claim 1 (and dependent claim 6) of the '029 patent recites, in relevant part (SOF#25):

- "[a] method of adjusting image lighting" (element 1[a]);
- "generating a preparatory light …" (element 1[b]); and
- "*capturing a preparatory image* while generating the preparatory light …." (element 1[c]).

Although claims 1 and 6 do not include the explicit words "image sensor," these method claims require the use or exploitation of an image sensor to "captur[e] a preparatory image." SOF#27-28. The '029 patent confirms that an image sensor is used to acquire (i.e., capture)[7] an image. *See, e.g.*, SOF#26; A060 ('029, 2:1 ("An image sensor utilized to capture an image ….")); A061 ('029, 4:58-59 ("[T]he camera operation procedure 220 causes the image sensor 106 to acquire an

---

[7] Imperium's expert recognizes that the term "acquire" describes "capturing" an image. *See* A091, A111 (Wright. Rpt.) ("[W]henever an image sensor acquires data, it has acquired, or 'captured,' an image ….").

image.")); A062 ('029, 6:32-34 ("A mass pixel transfer signal causes the image sensor to transfer the charge in its cells to the vertical shift registers to capture an image.")).  This is true of the "preparatory image" as well:  "[a]n image sensor acquires a preparatory image …. The preparatory image data corresponding to the preparatory image from the image sensor is processed …."  SOF#26; A049 ('029 patent, Abstract).

Indeed, in the Texas Action, both parties' experts agreed that an image sensor is required to practice claim 1.  Samsung's expert[8] opined that it is "not possible to capture a preparatory image without using an image sensor."  A878 (¶132); *see also* SOF#27.  Imperium's Dr. Wright, admitted that to practice claim 1, "you would need some sort of digital imaging sensor," A821 (256:17-22) (Wright Dep. Tr.), and that "whenever an image sensor acquires data, it has acquired, or 'captured,' an image." *E.g.*, A194; SOF#28, 30.

### (c)    Claims 1, 6, 14, and 16 Need A Supplemental Lighting Source in Order to "Generate a Preparatory Light"

Claims 14 and 16 explicitly require "a strobe" (i.e., a flash) (element 14[b]) that is "activated to generate a preparatory light [i.e., pre-flash]" (element 14[c]). SOF#17.  Similarly, claims 1 and 6 require "generating a preparatory light" (element 1[b]), which necessarily requires the use of a strobe or similar supplemental lighting

---

[8] Ken Parulski was Samsung's expert in the Texas Action and is its expert in this case.

source.  SOF#25.  Consistent with the claim language, Imperium's Dr. Wright confirmed at his deposition that, to infringe the '029 patent, a product must have a supplemental lighting source (i.e., a strobe that generates the flash), and that if a camera did not have such a light source, he did not accuse the camera of infringement.  SOF#14.

The strobe that "generat[es] the preparatory light" limitation is relevant to this motion because it confirms which of the two cameras—main (rear) camera or the VT (front) camera—in the accused smartphones was accused of infringement.  *See* § II.B.1.b, *supra*.  That the accused smartphones have two cameras raises potential confusion regarding which one is being accused.  The presence of the claimed "strobe" identifies which of the two cameras in the Samsung smartphones is generating the preparatory light for the preparatory image and, accordingly, was being accused.  In other words: only a camera with a flash (i.e., the claimed "strobe") could have been accused of infringing the '029 pre-flash patent.  *See* SOF#14.

Importantly, only the main (rear) camera of the five Sony-Only smartphone products include a flash (i.e., a strobe) to "generate a preparatory light," as required by the claims.  SOF#13-15.  As a result, these main cameras with Sony sensors are the only cameras in these five products that were accused of infringement.  Indeed, Dr. Wright opined for claim 1 (element 1[a]) and claim 14 (element 14[b]) that the smartphone products have a flash, citing only to materials that disclose a flash

15

associated with the main (rear) cameras that incorporate a Sony sensor.  SOF#29 (citing A178-188 (Wright Rpt. Exs., claim element 1[a])); SOF#18 (citing A404-414 (Wright Rpt. Exs., claim element 14[b])).  Furthermore, Imperium's expert confirmed in his testimony that he was accusing the main camera of the Galaxy Note 2, an exemplary Sony-Only smartphone, of infringing the asserted claims of the '029 patent.  A819 (Wright Dep. Tr. at 247:22-248:1); *see also* A084 (specifically opining on the "rear-facing camera" of the Galaxy Note 2 that incorporates a flash, citing A832).

### 3. Imperium Breached the Covenant by Relying on Licensed Sony Image Sensors (or the Exploitation Thereof) in Alleging Infringement of the '029 Patent

In asserting the '029 patent against Sony-Only products, Imperium relied impermissibly on Sony image sensors (i.e., Licensed Products) or the exploitation of those sensors to satisfy elements of claims 1, 6, 14, and 16 of the '029 patent (i.e., a Licensed Patent), thereby breaching the Section 2.6 Covenant.

#### (a) Imperium Relied on Sony Image Sensors to Satisfy the "Image Sensor" Limitation of Claims 14 and 16

Claims 14 and 16 expressly require an image sensor in element 14[c]—"an image sensor coupled to a memory…."  SOF#17.  Imperium, through Dr. Wright's testimony, expert report, and supporting claim charts, relied on a Sony image sensor in demonstrating that each of the Sony-Only products satisfy element 14[c], thereby breaching the Covenant.  SOF#20-23; A106-112; A419-789; *see* § II.A.2, *supra*.

16

Specifically, Imperium's Dr. Wright opined for element 14[c] that 

*See also* SOF#19-20.

To support his opinion in element 14[c] that each Sony-Only product "has a camera that incorporates an image sensor," Dr. Wright refers to his analysis "[a]s shown under element 14[a]," in which he cites to Attachment A.  SOF#21.  As discussed above (§ II.B.1.a, *supra*), for the Sony-Only digital cameras, Attachment A confirms these products incorporate only a Sony image sensor.  SOF#22.  For the Sony-Only smartphones, Attachment A confirms those products incorporate only a Sony image sensor for the main (i.e., rear) camera.  SOF#23; *supra* § II.B.1.b.  As noted above, Imperium and Dr. Wright accused the main cameras of the Sony-Only smartphones because these cameras have a flash.  *Supra* § II.B.2.c.

In view of Dr. Wright's opinions, as well as his admission that a product must have an image sensor to practice claim 14, (§ II.B.2.a, *supra*), Imperium indisputably relied on Sony image sensors (or the exploitation thereof) in the Sony-Only products to satisfy elements of claim 14 (and claim 16), thereby breaching the Covenant.

### (b) Imperium Relied on Sony Image Sensors (or the Exploitation Thereof) to Satisfy Elements of Claims 1 and 6

Imperium, through Dr. Wright's testimony, expert report, and supporting claim charts, also relied on Sony image sensors (or the exploitation thereof) to demonstrate that each of the Sony-Only products satisfy the "capturing a preparatory image" limitation of claims 1 and 6 of the '029 patent. SOF#24-31.

As explained above, the claimed step in element 1[c] of "capturing a preparatory image" requires—according to both Imperium's and Samsung's experts and the '029 patent's disclosure—the use or exploitation of an image sensor. *Supra* § XII.B.2.b; *see also* SOF#27-28. Imperium's Dr. Wright relied on the accused products' Sony image sensors (or the exploitation of those sensors) for element 1[c]. SOF#30-31. For each Sony-Only product, Dr. Wright opined that ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SOF#30.

18

Again, for the Sony-Only digital cameras, Attachment A confirms that the products incorporate only a Sony image sensor.  SOF#31.  And, again, for the Sony-Only smartphones, Attachment A confirms these products incorporate only a Sony image sensor for the main (i.e., rear) cameras accused by Imperium.  *Id*.; *see also* § II.B.2.c, *supra*.

In view of Dr. Wright's opinions, as well as his admission that a product must have an image sensor to practice claim 1, (*supra* § II.B.2.b; SOF#28), Imperium indisputably relied on the Sony image sensors incorporated in the Sony-Only products (or the exploitation thereof) to satisfy elements of claim 1 (because image sensors are necessary for "capturing a preparatory image"), thereby breaching the Covenant.

## C.    Imperium's Breach Damaged Samsung

While in this motion Samsung is not seeking to quantify damages and is only seeking to establish liability, Samsung incurred damages, including substantial litigation expenses, as a result of Imperium's breach, as set forth in the unrebutted[9] Expert Report of David Cabello.  SOF#32.  In the Texas Action, Samsung necessarily incurred fees and expenses to litigate claims 1, 6, 14, and 16 of the '029 patent, including with respect to the Sony-Only products.  *Id.*  Samsung was also forced to incur fees and expenses in bringing this lawsuit and demonstrating

---

[9] Imperium did not submit any expert report in this action.

Imperium's breach. These damages are recoverable under the SLA, which provides that if Imperium violates Section 2.6, Imperium "shall reimburse… customers… of Licensee [Sony], for all reasonable costs, fees, and damages" caused by that violation. A009 (§ 2.6).

## **CONCLUSION**

For the reasons stated above, Samsung respectfully requests that the Court grant its Motion for Partial Summary Judgment, finding that Imperium has breached the second sentence of Section 2.6 of the SLA by relying on the Sony sensors in the Sony-Only products in asserting infringement of the '029 patent.

/s/ John W. Shaw
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff Samsung*
*Electronics Co., Ltd.*

OF COUNSEL:
Jesse J. Jenner
Steven Pepe
Kevin J. Post
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Samuel L. Brenner
Scott S. Taylor
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Douglas H. Hallward-Driemeier
Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
(202) 508-4600

Dated: March 8, 2021

## <u>CERTIFICATION OF COMPLIANCE WITH TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION</u>

I hereby certify that this brief complies with the word count limitations of this Court's standing scheduling order because this brief contains 4,421 words. This brief complies with the type and font limitations of this Court's standing scheduling order because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

OF COUNSEL:

Jesse J. Jenner
Steven Pepe
Kevin J. Post
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Samuel L. Brenner
Scott S. Taylor
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Douglas H. Hallward-Driemeier
Jonathan R. Ference-Burke
Kathryn C. Thornton
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 2006-6807
(202) 508-4600

Dated:  March 8, 2021

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com

*Attorneys for Plaintiff Samsung Electronics Co., Ltd.*

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on March 8, 2021, this document was

served on the person listed below in the manner indicated:

**BY EMAIL**

Joelle E. Polesky
STRADLEY RONON STEVENS
& YOUNG, LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 295-3805
jpolesky@stradley.com

Gregory L. Ewing
POTOMAC LAW GROUP, PLLC
1300 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 204-3005
gewing@potomaclaw.com

/s/ John W. Shaw
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff Samsung
Electronics Co., Ltd.*