IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> IMPERIUM IP HOLDINGS (CAYMAN), LTD., <br><br> Defendant. | Civil Action No. 15-1059-CFC-CJB |

## **MEMORANDUM ORDER**

On May 12, 2021 I issued an Order (D.I. 197) denying Defendant Imperium IP Holdings (Cayman), Ltd.'s motion for summary judgment in this breach of contract action brought by Plaintiff Samsung Electronics, Company, Ltd. Imperium has moved for reconsideration of the Order. Imperium argues that the Order "does not address a legal issue—that Samsung is an Excluded Party [under the contract in question]—that is case dispositive." D.I. 198 at 1. Whether Samsung is an Excluded Party with respect to what the contract calls "Covered Third Party Products," however, is not a legal issue for the Court to decide. It is rather, as I concluded in my Order, an issue of fact subject to conflicting record

evidence that only the jury can resolve. I will therefore deny Imperium's motion for reconsideration.

The contract in question, titled "Settlement and License Agreement" (SLA), was executed in 2013 by Imperium and two non-parties: Sony Corporation and its subsidiary, Sony Mobile Communications (USA) Inc. Samsung claims to be a third-party beneficiary of the SLA. Samsung alleges that Imperium breached the SLA when Imperium litigated a 2014 patent infringement suit against Samsung in the Eastern District of Texas and on appeal in the Federal Circuit and that Imperium again breached and continues to breach the SLA based on Imperium's filing in 2020 of an action against Samsung that is currently pending before the International Trade Commission (ITC). Imperium accused Samsung in both the Texas case and the ITC proceeding of infringing patents in a portfolio (the Licensed Patents) that Imperium licensed to Sony under the SLA. Some of the Samsung products Imperium accused of infringement in the Texas case and the ITC proceeding contain Sony products.

Section 2.8 of the SLA is titled "Excluded Parties." The section consists of three sentences, which I have marked by bracketed numbers for ease of reference:

> [1] To the extent any license, covenant or release conveyed hereunder extends to a Third Party, such rights only extend to the provision of goods and the exploitation of goods provided by or to [Sony] and its Affiliates, and expressly do not extend to the provision of goods to or the exploitation of goods by any other entity. [2] For

2

> avoidance of doubt, nothing herein shall be construed to convey any license, release or other right (other than for the provision of goods directly or indirectly to, and the exploitation of goods provided directly or indirectly by, [Sony] and its Affiliates) to (i) any entity as long as it is a defendant (other than Sony Mobile) in the civil action referenced in the first WHEREAS clause of this Agreement; (ii) the persons listed on Schedule 2.5 hereto or (iii) Affiliates of any of the foregoing (but Affiliates of entities identified in Schedule 2.5, shall be Excluded Parties only if the name of such Affiliate includes the term set forth in Schedule 2.5 so as to enable ready identification of such entity as an Affiliate based on the terms in Schedule 2.5) (each, an "Excluded Party"). [3] Excluded Party shall not, however, include any Licensee Third Parties with respect to [Sony's] Products or Covered Third Party Products (regardless of whether or not they are included in subsections (i) – (iii) of this Section 2.8) (by way of example and not of limitation, an Entity which is a purchaser or end-user of a Sony imaging sensor is not an Excluded Party with respect to that Sony imaging sensor).

D.I. 177, Ex. 1 § 2.8.

The first sentence of section 2.8 expressly limits the rights that accompany any third-party license granted by the SLA to "the provision of goods and the exploitation of goods provided by or to [Sony] and its Affiliates." The SLA uses the word "exploitation" four times (three times in section 2.8). It does not use the word "exploit" and does not define "exploitation." I think it safe to give "exploitation" its ordinary meaning—i.e., making use of or deriving benefit from. Accordingly, as applied to this case, I read the first sentence of section 2.8 to mean that any rights Samsung has as a Licensee Third Party under the SLA would

3

extend only to products Samsung makes or sells that have in them or otherwise make use of a Sony product.

The stated intention of the second sentence of section 2.8 is to clearly identify ("[f]or avoidance of doubt") parties that are *not* Licensee Third Parties. The SLA calls these parties "Excluded Parties" and it identifies in the second sentence of section 2.8 three categories of Excluded Parties. The second category, defined in subsection (ii) of section 2.8, is "persons listed on [sic] Schedule 2.5 hereto." Although subsection (ii) refers to "persons," neither Imperium nor Samsung has suggested that a "person" cannot be an entity; and all the "persons" listed "on" Schedule 2.5 are in fact entities. One of those entities is Samsung. Accordingly, if the definition of Excluded Party were limited to the second sentence of section 2.8, Samsung would be an Excluded Party and would not be a Licensee Third Party under the SLA.

The definition of Excluded Party, however, is not limited to the second sentence of section 2.8. The third sentence of section 2.8 explicitly carves out from the definition of Excluded Party "any Licensee Third Parties with respect to [Sony's] Products or Covered Third Party Products (regardless of whether or not they are included in subsections (i) – (iii) of this Section 2.8)." Thus, even if a party is listed in Schedule 2.5, it is *not* an Excluded Party "with respect to [Sony's]

4

Products or Covered Third Party Products" if it is a Licensee Third Party "with respect to [Sony's] Products or Covered Third Party Products."

The parties dispute whether Samsung is a Licensee Third Party with respect to Covered Third Party Products. The SLA defines Licensee Third Parties to mean

> vendors, suppliers, manufacturers, developers, distributors, contractors, partners, hosts, dealers, resellers, retailers, value added resellers (VARs), original equipment manufacturers, maintenance and support service providers, purchasers, customers and end-users of any [Sony] Products or Covered Third Party Products but solely with respect to such [Sony] Products or Covered Third Party Products.

D.I. 177, Ex. 1 at 2. The SLA defines Covered Third Party Products to mean

> (i) Third Party products or services designed and marketed to operate in conjunction with or offered for sale or sold via a Licensed Product; or (ii) Third Party products or services that when running, using, operating within, or otherwise benefitting from the functionality of a [Sony] Product is [sic] covered by any claim of the Licensed Patents.

D.I. 177, Ex. 1 at 2. Imperium argued in its summary judgment briefing that it was entitled to summary judgment because "[t]he undisputed facts show that Samsung cannot satisfy the second definition of Covered Third Party Products." D.I. 161 at 13.

I note as an initial matter what I conclude is a typographical error in the second definition. Under the definition, the term Covered Third Party Products (plural) "means . . . (ii) Third Party products [plural] or services [plural] that when

5

running, using, operating within, or otherwise benefitting from the functionality of a [Sony] Product [singular] *is* [singular] covered by any claim of the Licensed Patents." D.I. 177, Ex. 1 at 2 (emphasis added). I think it clear that the "is" should be an "are." The sentence does not make sense if the "is" is paired with the only singular noun that precedes it (a Sony product). With that correction, the definition is clear that for Samsung to be a Licensee Third Party with respect to Covered Third Party Products, two questions must be answered with a yes: (1) Do the Samsung products Imperium accused of infringement in the Texas case and the ITC proceeding "run[ ], us[e], operat[e] within, or otherwise benefit[ ] from the functionality of a [Sony] Product? And (2) when "running, using, operating within, or otherwise benefitting from the functionality of [the] [Sony] Product" in question, are the Samsung products covered by any claim of the Licensed Patents?[1]

The parties take opposing positions on these questions. The irony in both parties' positions should make for an interesting trial. Imperium argues that Samsung cannot satisfy the second definition of Covered Third Party Products and thus by logical necessity it impliedly answers "no" to both questions, even though in both the Texas case and the ITC proceeding Imperium accused Samsung

---

[1] I note that, consistent with the language of the SLA's definition of Covered Third Party Products, the second question asks whether Samsung's accused products are covered (or were covered) by any claim of the Licensed Patents, *not* whether the accused products are (or were) *alleged to be* covered by one of the patents' claims.

products that ran, used, operated within and otherwise benefitted from a Sony product of infringing claims of the Licensed Patents. Samsung, on the other hand, insists that the accused products in the Texas case and the ITC proceeding meet the second definition of Covered Third Party Products and thus by logical necessity it impliedly answers both questions with a "yes," even though, when pressed by me at the preliminary injunction argument, it said it was "not prepared to admit" that its products accused of infringement in the ITC proceeding are covered by any of the Licensed Patents. *See* Tr. of Jan. 29, 2021 Hr'g at 95.

Regardless of what Samsung is prepared to admit at this juncture, it has adduced and brought to my attention record evidence that flatly contradicts Imperium's assertion that "[t]he undisputed facts show that Samsung cannot satisfy the second definition of Covered Third Party Products." As the movant for summary judgment, Imperium bore the burden of establishing the absence of a disputed material fact. But as I concluded in the Order:

> Imperium has admitted that at least some of the Samsung products that were at issue in the Texas case and are at issue in the ITC proceeding contain Sony sensors that practice at least one claim of a Licensed Patent. D.I. 177, Ex. 16 at SA228–SA229; *see also* D.I. 177, Ex. 7 at SA067–SA071; Ex. 15 at SA221–SA225. This admission provides Samsung with record evidence from which a jury could reasonably infer that (1) when the Texas case was being litigated (and before any Licensed Patent was declared invalid) the accused products in that case were covered by a claim of a Licensed Patent and (2) the Samsung products at issue in the pending ITC

7

> proceeding are covered by a claim of a Licensed Patent.
> Because record evidence exists to dispute Imperium's
> assertion that Samsung could not satisfy the second
> definition of Covered Third Party Products, there is at
> least one disputed material fact that precludes the entry of
> summary judgment. See *Anderson v. Liberty Lobby, Inc.*,
> 477 U.S. 242, 248 (1986) (holding that summary
> judgment will not lie if there is a genuine dispute about a
> material fact).

D.I. 197 at 1–2. Nothing in Imperium's motion for reconsideration gives me reason to doubt this conclusion.

Imperium makes two other points that I did not address in my Order but will do so now for the benefit of the parties as we approach trial. First, Imperium argues that the example described in the parenthetical clause that concludes the third sentence of section 2.8 "is illustrative of the situation here" and demonstrates that "Samsung image sensors are excluded and are not covered by the SLA." D.I. 198 at 4–5. The parenthetical clause reads: "[B]y way of example *and not of limitation*, an Entity which is a purchaser or end-user of a Sony imaging sensor is not an Excluded Party with respect to that Sony imaging sensor." (Emphasis added.) Thus, contrary to Imperium's argument, the purchase of a Sony imaging sensor (or use of a Sony imaging sensor as a component of a product) does not limit an entity to being a Licensee Third Party only with respect to that Sony imaging sensor.

Second, Imperium makes much of the fact that I made comments during the preliminary injunction argument to the effect that Imperium would never have agreed to a release as broad as Samsung was arguing the SLA contained. In retrospect and with the benefit of time that a preliminary injunction adjudication does not afford, I believe that my comments may have been ill-advised (though I would want to hear further argument before making a definitive conclusion about that). In any event, "a court's findings and conclusions at the preliminary injunction stage are by nature preliminary and therefore are not binding at summary judgment." *Parkell v. Senato*, 639 F. App'x 115, 117 (3d Cir. 2016) (citations, internal quotation marks, and ellipses omitted). Accordingly, my comments should be the source of neither comfort nor concern.

NOW THEREFORE, at Wilmington this Seventeenth day of May in 2021, **IT IS HEREBY ORDERED** that Imperium's motion for reconsideration (D.I. 198) is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE